Guy FORD, Appellant,

v.

The STATE of Texas, Appellee.

No. 44375.

Court of Criminal Appeals of Texas.

June 7, 1972.

Rehearing Denied Oct. 11, 1972.

**728**

Cutler & Epps by John Cutler, Houston, for appellant.

Carol S. Vance, Dist. Atty., Phyllis Bell and F. M. Stover, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for murder with malice. Trial was before a jury which assessed the death penalty.

In his brief, appellant asserts five grounds of error. We shall consider his fourth ground first. In his fourth ground of error, appellant contends that the trial court erred in admitting evidence of an extraneous offense. A brief summary of the evidence is needed before this ground can be discussed on its merits.

Charles P. Glasse, Jr., testified that on May 26, 1969, he was employed with his father, K. P. Glasse, in a family owned chemical business in the city of Houston. He testified that on that date he went to the place of business early in the morning, following his usual practice. As he approached the building, he observed the appellant seated on the steps of a building located across the street from the chemical business. He parked his car and went inside, where he performed the routine tasks connected with opening the business. Shortly thereafter, he saw appellant talking with his father in the front part of the building. His father introduced appellant to him as "Charles White," and asked if he had work for appellant. Charles replied that he did, and told appellant to wait until he finished sweeping the floor, at which time he would show appellant the work which was to be done. Charles testified that shortly thereafter, he turned around to find appellant pointing a pistol at him. Appellant held the pistol at his head, and forced him to walk to the front office where K. P. Glasse was seated at a desk. Appellant told K. P. to give him his money. Charles testified that he then moved toward appellant, who then pointed the pistol at him. At that time, K. P. lunged toward appellant. Appellant turned and fired the pistol, the bullet striking K. P. in the hip. K. P. fell to the floor, and appellant fired again, striking K. P. in the back. Appellant took K. P.'s wallet. A brief struggle ensued between Charles Glasse and appellant, after which appellant fled from the building. He ran across an adjacent parking lot, tripping over a cable. Charles followed, shouting for someone to stop appellant. However, Charles did not continue the chase, but returned to his father. Charles was unequivocal in his identification of appellant as the perpetrator of

the crime, and did not qualify his testimony on cross-examination.

Two other witnesses testified that they were in the adjacent parking lot at the time, and that they saw appellant run from the building and cross the lot, and heard shouting. One of the two stated that he first heard a "bang," and saw appellant carrying an object which appeared to be a wallet. The other witness did not hear a noise nor did he see the wallet, but he did hear the shouting and see appellant run. Both witnesses were unequivocal in their identification of appellant.

The State then called two witnesses who testified, over appellant's objection, that on July 25, 1969, they were employed at a supermarket in Houston where a robbery occurred on that date. They testified that the robbery was committed by four Negro males, one of whom was the appellant. One witness testified that she saw appellant fire his pistol four times. She stated that he wore a purple knit-type shirt. She testified that she gave money from the ' cash register to one of the robbers but did not know which one. The other witness testified that appellant hit him and shot him during the course of the robbery. He was unable to describe appellant's dress at the time of the robbery. There was testimony as to the location of the supermarket, but there was no testimony as to its location in relation to the chemical company. Appellant's fourth ground of error concerns the admission of evidence concerning this second robbery.

Appellant testified in his own behalf, claiming to have been working at another place on the day of the murder. His employer at the job corroborated his testimony.

■ It is axiomatic that evidence of other offenses is not generally admissible as evidence of guilt. However, evidence which is relevant to a fact in issue is not rendered inadmissible merely because it shows the commission of other offenses. Some of the exceptions to the general rule of inadmissibility are that evidence of other crimes is admissible when relevant to the issues of motive, identity, refutation of alibi, and intent. In the present case, the State offered the evidence on the issue of flight and on the issue of identity.

■■ Evidence of another crime is admissible to prove identity, when identity is in issue, only if there is some distinguishing characteristic common to both the extraneous offense and the offense for which the accused is on trial. *See*, Lancaster v. State, 82 Tex.Cr.R. 473, 200 S.W. 167 (1918); Nunn v. State, 60 Tex.Cr.R. 86, 131 S.W. 320 (1910); Warren v. State, 178 Tenn. 157, 156 S.W.2d 416 (1941); Hergenrother v. State, 215 Ind. 89, 18 N.E.2d 784 (1939); Whiteman v. State, 119 Ohio St. 285, 164 N.E. 51 (1928); Dorsey v. State, 25 Ariz. 139, 213 P. 1011 (1923); Miller v. State, 13 Okl.Cr. 176, 163 P. 131 (1917). *See generally*, Anno. 42 A.L.R.2d 854. The evidence of the other crime must be relevant on some theory other than the general proposition that one who commits one crime is prone to commit another. State v. Montgomery, 170 La. 203, 127 So. 601 (1930); Mason v. State, 259 Ala. 438, 66 So.2d 557, 42 A.L.R.2d 847 (1953). The evidence of the other crime is offered as circumstantial evidence of the identity of the accused as the perpetrator of the principal case. That is, if it is established that the accused committed an extraneous offense, and that there is some distinguishing characteristic common both to it and the offense for which the accused is on trial, then an inference may be drawn that the accused was the person who committed the primary offense. On the other hand, if there is no common distinguishing characteristic, then the evidence is offered only to show that the accused has once committed a crime, and is therefore likely to have committed the principal offense. This is not permitted.

The common distinguishing characteristic may be the proximity in time and place

of the extraneous offense to the offense for which the accused is being tried. Or, the common element may be the mode of commission of the crimes, or the mode of dress of the perpetrator, or any other element which marks both crimes as having been committed by the same person.[1]

■ In the instant case, assuming that identity was in issue, we do not feel that there was sufficient connection between the supermarket robbery and the robbery-murder at the chemical company to render evidence of the former admissible as tending to indicate that appellant committed the latter. The similarities between the two are few, and they are neither distinguishing, novel nor unusual. The evidence reflected that the perpetrator of the chemical company robbery was a tall Negro male, and appellant is tall. Pistols were used in both robberies, and persons were injured in both cases. The perpetrator of the chemical company robbery was described as wearing a purple, silk-type shirt. At the supermarket robbery, appellant wore a purple or lavender knit or sweater-type top. On the other hand, the evidence of dissimilarity and the lack of evidence of similarity are great. The robberies were separated by almost two months in time. The supermarket robbery was committed by four men; the chemical company robbery-murder by one. The chemical company robbery was committed after appellant entered on the pretext of seeking work. No evidence appears as to how entry was gained at the supermarket, but apparently it was not by that method.

In summary, we feel that there was no evidence of any distinguishing characteristic which would mark both events. Had there been evidence that the same pistol had been used in both robberies, or that four men committed both, acting in the same manner in each instance, or had there

been some distinguishing characteristic, then a different result might be reached.

■ We recognize that there will always be similarities in the commission of the same type of crime. That is, any case of robbery by firearms is quite likely to have been committed in much the same way as any other. What must be shown to make the evidence of the extraneous crime admissible is something that sets it apart from its class or type of crime in general, and marks it distinctively in the same manner as the principal crime. *See*, Lancaster v. State, 82 Tex.Cr.R. 473, 200 S.W. 167 (1918); People v. Romano, 84 App.Div. 318, 82 N.Y.S. 749 (1903).

In the instant case, we find no distinguishing characteristic common to both crimes. There are similarities, but they are more in the nature of the similarities common to the type of crime itself rather than similarities peculiar to both offenses alone.

■ It should be remembered that evidence of other crimes is not excluded because it is without probative value, but because it may unduly prejudice the jury and cause the accused to be tried for more than one offense at a time. *See*, 22A C.J.S. Criminal Law § 682. Therefore, before such evidence is admitted, it must be shown to be more reliable and of greater probative value than mere evidence of the commission of another crime. Hence, the requirement that it be distinctive.

■ It should also be noted that under the other exceptions to the rule against admission of extraneous offenses, it is not always necessary to show similarity. For example, evidence to rebut alibi is admissible if it places the accused at a place

1. For a good example of extraneous offenses with common distinguishing characteristics, offered to show identity, *see*

Whiteman v. State, 119 Ohio St. 285, 164 N.E. 51, 63 A.L.R. 595 (1928).

where he claimed not to be, or if the evidence shows the impossibility of his alibi, notwithstanding the fact that it shows the commission of an offense, and that the offense is dissimilar. For example, had the supermarket robbery occurred on the same day, two hours after the present robbery-murder, evidence of the former would have been admissible to refute appellant's alibi defense, notwithstanding the lack of a distinguishing characteristic. This is so because in the case of alibi, the evidence is offered to show that the accused was not where he claimed to be, and similarity is not an element of admissibility. In the case of identity, similarity is required as a basis for the inference to be drawn from the evidence of the former crime.

In the instant case, the evidence, if relevant at all, was admissible only on the issue of identity. Appellant's alibi concerned only the date of commission of the present offense. That he was elsewhere nearly two months later does not refute his alibi. Also, the evidence was offered for the purpose of showing flight. That the appellant was in Houston nearly two months later does not indicate flight. *See,* Jones v. State, 481 S.W.2d 900 No. 44,821 (Tex.Cr.App.1972).

While this crime represents a senseless, brutal killing, we are unable to say that the admission of evidence of a later robbery and wounding was harmless error. In light of the penalty assessed, we cannot say with certainty that appellant was not harmed.

In light of our disposition of this ground, we need not consider appellant's remaining grounds of error.

The judgment is reversed and the cause remanded.

ODOM, J., not participating.