Raymond Rodriquez **ESPINOZA**, Appellant,

v.

The **STATE** of **Texas**, Appellee.

Henry **ESPINOZA**, Appellant,

v.

The **STATE** of **Texas**, Appellee.

Nos. 002–84, 003–84.

Court of Criminal Appeals of Texas, En Banc.

Oct. 21, 1987.

Ward Casey, Fort Worth, Joseph A. Connors, III, McAllen, for appellant.

John B. Holmes, Jr., Dist. Atty. and James C. Brough, Charley Davidson and Don Smyth, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

Appellants were convicted by a jury of aggravated robbery. Punishment was assessed by the trial court at twenty years confinement and a fine of ten thousand dollars each. On appeal the Fourteenth Court of Appeals reversed the convictions. *Espinoza v. State*, 662 S.W.2d 745 (Tx.App.—Houston (14th), 1983).

We have reviewed the issues and find upon reconsideration that this petition was improvidently granted. It is therefore ordered dismissed. See *Grigsby v. State*, 653 S.W.2d 43 (Tex.Cr.App.1983).

CLINTON, Judge, concurring.

Whatever prompted my Brothers upon reconsideration to dismiss this petition, it is

enough for me that the question presented for review in this cause is not one of substantive law, *viz:*

> "When robbers in two distinct robberies (the instant offense and an extraneous offense) (1) gain entrance into their victim's homes to commit the robbery, (2) rob their victims of expensive jewelry and money, (3) speak with Spanish accents, (4) wear similar clothing, (5) tie their victims with the neckties of the husband victims and (6) pull the telephones from the wall, are these similarities characteristics which are *common to the type of crime committed* (aggravated robbery), *or* are they characteristics so *distinctive as to be the signature* of the robbers, so that the extraneous offense is admissible on the issue of identity, such identity issue being raised by the evidence of alibi and identification primarily by voice?"

State's Petition, at 2–3. (All emphasis is mine throughout unless otherwise noted.)

Looking at same "similarities," the Court of Appeals had found:

> "These similarities are not so distinctive to be the appellants' 'signature.' The majority of these similarities are characteristics *common to the type of crime committed rather than similarities peculiar to both offenses.*"

*Espinoza v. State*, 662 S.W.2d 745, at 747 (Tex.App.—Houston [14th] 1983). In its brief the State asserts:

> "The Court of Appeals has decided ... an important question of *state law* in conflict with the applicable decisions of the Court of Criminal Appeals, i.e., that distinctions which are *quite different from most aggravated robberies* are common distinctions of aggravated robbery, rather than being the 'signature' of the robbers."

State's Brief, at 2. It contends the decision "goes far beyond the requirements of *Ford v. State*, 484 S.W.2d 727 (Tex.Cr.App.

1972)," and that it is a harbinger of dire consequences. *Ibid.*[1]

In *Ford v. State*, supra, the Court stated some propositions of law applicable where identity is an issue. In the instant cause both parties and the Court cite *Ford* for one or another of those propositions, but none concentrates on the narrow question here presented in light of the central requirement of *Ford, viz:*

> "We recognize that there will always be similarities in the commission of the same type of crime. That is, any case of robbery by firearms is quite likely to have been committed in much the same way as any other. What *must be shown* to make the evidence of the extraneous crime admissible is *something that sets it apart from its class or type of crime in general, and marks it distinctively in the same manner as the principal crime. [Citations omitted]."*

*Id.,* at 730. That last sentence is a statement of law.

The Houston (14th) Court did not "set up" a new "test," different from *Ford.* Rather, accepting and following that statement of law in *Ford,* it addressed the issue of admissibility in full light of *Ford,* including findings by the *Ford* court, towit:

> "In the instant case, we find no distinguishing characteristics common to both crimes. There are similarities, but they are more in the nature of the similarities common to the type of crime itself rather that similarities peculiar to both offenses alone."

*Ford,* at 730. Thus the question raised here is whether the Court of Appeals, using language taken from *Ford,* correctly found that most enumerated similarities "are characteristics common to the type of crime committed rather than similarities peculiar to both offenses," and therefore

---

1. The State insists *"this holding"* would preclude it from "ever us[ing] an extraneous offense to support equivocal evidence on the issue of identity, because it will be impossible to meet *the test here set up* for 'signature' characteristics." *Ibid.* With deference, the Houston (14th) Court made only a "finding"—its determination of "commonality"—not a "holding" of law, and "the test" had already been "set up" by the Court in *Ford,* supra. See *post.*

are not "so distinctive as to be the appellants' 'signature,'" *Espinoza,* at 747.[2]

Although enough judges voted to grant a review of the decision below, on further reflection and deliberation a majority of the Court has concluded that the question presented for review need not be answered by this Court, certainly not at this time.

For whatever the answer, it is not one of law. The answer is more factual in nature, and its determination lies in the eye of the beholder, influenced by all matters properly brought to bear on one's interpretation, reflection and judgment. Whether findings of the Houston (14th) are correct depends solely upon what a majority of judges may conclude in the premises. Still, even if they reached it, that conclusion makes no law—it merely gives a judgmental answer to a question already similarly answered by a majority of judges on the panel below.

My own view is the question presented did not then warrant review, however, since our rules do not contemplate a refusal at this stage, I have no alternative but to concur in the ultimate result, which is that the question will not be answered in this cause by this Court.

With those observations, I join the order of the Court.

DUNCAN, J., joins.

McCORMICK, Judge, dissenting.

Appellants were tried together before a jury for the offense of aggravated robbery. V.T.C.A., Penal Code, Section 29.03. They were found guilty and sentenced to twenty years' confinement and fined ten thousand dollars each. Appellants appealed to the Fourteenth Court of Appeals which reversed the convictions after finding that the trial court erroneously admitted evidence of an extraneous offense. *Espinoza v. State,* 662 S.W.2d 745 (Tex.App.—Houston (14th), 1983). We granted the State's petition for discretionary review. The ma-

jority now erroneously determines that such action was improvident.

The sole question before this Court was to determine if evidence of an extraneous offense was properly introduced against the appellants at trial. Appellants were accused of entering the Harris County home of the complaining witnesses and robbing them at gunpoint. Appellants offered in their defense alibis which indicated they were in the company of friends on the night in question. The State then introduced evidence that appellants had committed a very similar robbery in Tarrant County some thirty-nine days previously. This was done by introducing a victim of the Tarrant County robbery and eliciting testimony from her which identified the appellants as the persons who robbed her. The witness' testimony showed that, though she never saw the faces of the robbers, she had positively identified the appellants by their voices at a lineup held previous to the trial.

On original appeal, appellants maintained that the evidence of the extraneous offense was inadmissible because there were not enough similarities between the two offenses to justify admission of the evidence. Appellants particularly argued that there was not a close enough proximity in time and place to justify admitting this evidence. Appellants further argued that the evidence was far more prejudicial than it was probative and that the trial court committed reversible error in allowing it to be used by the State. See *Williams v. State,* 662 S.W.2d 344 (Tex.Cr.App.1983); *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr.App. 1972). Appellants furthermore argued that before an extraneous offense is admissible it must be clearly proven that the accused was the perpetrator of the extraneous offense. Appellants contended that it was not clearly proven that they were the persons who committed the extraneous offense and that the witness from Tarrant

---

**2.** While at the outset it recognized and criticizes the manner in which the Houston (14th) Court applied *Ford,* see *ante* at 670, near the end the State does not address the question headon. Instead, passing over the matter of similarities being "characteristics common to the type of crime committed," it is content to argue that "similarities listed by the Court of Appeals are such common characteristics [of both extraneous offenses]." State's Brief, at 6.

County only identified the appellants by voice and build.

The appellants' point of view prevailed on appeal. The Court of Appeals decided that there were too many dissimilarities between the two crimes and too few similarities to permit this evidence to be introduced. The court held that the evidence was far more prejudicial than probative.

The State, in its petition for discretionary review, argued that the similarities in the two offenses were sufficient to constitute a "signature" of the offenders and thus refuted the appellants' alibi. The State argued that the extraneous offense in question was thus far more probative than the appellants admit and its value to the trier of fact far outweighed whatever prejudice it caused the appellants.

Unlike the majority of this Court and the Court of Appeals, I find the State's argument meritorious. It is a well established and fundamental principle in our system of justice that an accused person must be tried only for the offense charged and not for being a criminal (or a bad person) generally. *Williams v. State*, supra; *Albrecht v. State*, supra; *Rubio v. State*, 607 S.W.2d 498 (Tex.Cr.App.1980). It is for this reason that Anglo–American jurisprudence has always shown a marked reluctance to admit evidence of extraneous offenses or prior misconduct. Such evidence carries with it the danger that a defendant in a criminal action may be convicted of an implied charge of having a propensity to commit crimes generally rather than the specific offense for which he is on trial. *Williams v. State*, supra; *Elkins v. State*, 647 S.W.2d 663 (Tex.Cr.App.1983); *Bates v. State*, 643 S.W.2d 939 (Tex.Cr.App.1982).

There is, however, an equally well established corollary to the general rule which prohibits evidence of prior misconduct from being admitted at trial. In some cases circumstances exist which justify the admission of such evidence in spite of its inherent dangers. For this reason, several exceptions to the general rule prohibiting the admission of this form of evidence have evolved. *Albrecht v. State*, supra.

One such exception to the rule that an accused may not be tried for a collateral crime is that evidence of an extraneous offense may be admissible to refute a defensive theory raised by the accused. *Dickey v. State*, 646 S.W.2d 232 (Tex.Cr. App.1983); *Albrecht v. State*, supra. When an accused offers the defense of alibi he places his identity in issue. *Dickey v. State*, supra; *Wintters v. State*, 616 S.W.2d 197 (Tex.Cr.App.1981). Of course, it is true that evidence of an extraneous offense is admissible only if there is some distinguishing characteristic common to both the extraneous offense and the offense for which the accused is on trial. *Wintters v. State*, supra. The rationale for this in a case in which the State is seeking to establish identity is to permit the trier of fact to draw an inference that the identified perpetrators of the extraneous offense are also the guilty parties in the case at trial. *Collins v. State*, 577 S.W.2d 236 (Tex.Cr.App.1979). In the case before us the common characteristics of the two offenses are as follows:

(1) Both robberies occurred in the late evening, at approximately 10 p.m.

(2) Both homes involved were expensive and located in affluent if not wealthy neighborhoods.

(3) Both sets of victims were watching television at the time of the robbery.

(4) Both offenses were committed by two men of apparently Hispanic descent, speaking with "Spanish" accents.

(5) On both occasions the intruders covered their faces with hoods or bandanas.

(6) On both occasions the offenders were dressed in dark long sleeve shirts and wore dark blue pants and wore gloves.

(7) On both occasions each intruder clasped his gun in both hands.

(8) On both occasions the intruders ordered the victims of the robberies to lie on the floor and tied their hands with neckties belonging to the male member of the households.

(9) The intruders covered the heads of both sets of victims with cloth material.

(10) The property taken on both occasions was very similar—cash and authentic jewelry—and on both occasions a substantial amount of money or valuable property was stolen.

(11) On both occasions the intruders ignored other valuables such as costume jewelry, silverware or art objects.

I believe these are very similar characteristics which indicate a technique and modis operandi which constitute an identifying "signature" of the offenses in question. Clearly the trial court did not err in giving the trier of fact the opportunity to hear the evidence and then draw whatever inferences the trier of fact felt was mandated. Furthermore, I remind the majority that the jury was properly instructed that before they could even consider the evidence they had to believe beyond a reasonable doubt that the appellants committed the offense. They were also instructed that even if they believed the testimony from the victim of the Tarrant County robbery, they were only to consider it for the purpose of proving identity. I believe that the jury as trier of fact properly had the evidence before them.

Because I believe that the decision of the Court of Appeals was erroneous and that this Court properly granted the State's petition for discretionary review, I must dissent to the majority stamp of "improvidently granted."

ONION, P.J., and DAVIS and WHITE, JJ., join this dissent.