NUMBERS 13-00-035-CR
& 13-00-042-CR

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI B
EDINBURG

 

 

 

CHARLIE MELVIN PAGE,                                           Appellant,

 

                                           v.

 

THE
STATE OF TEXAS,                                              Appellee.

 

 

 

                  On appeal from the 122nd
District Court 

                          of Galveston County,
Texas.

 

 

 

                           OPINION ON REMAND

 

 Before
Chief Justice Valdez and Justices Rodriguez and Baird[1]

                                      Opinion On Remand by Justice Baird

 








Appellant was charged
in separate indictments with the offenses of sexual assault and impersonating a
peace officer.  The cases were combined
into a single trial where a jury convicted appellant of both offenses and
assessed punishment at seven years and five years confinement, respectively, in
the Texas Department of Criminal JusticeBInstitutional
Division.  We reversed the judgment of
the trial court.  See Page v. State,
88 S.W.3d 755 (Tex. App.BCorpus Christi 2002), rev=d, 137 S.W.3d 75, 79
(Tex. Crim. App. 2004).  The Texas Court
of Criminal Appeals, in turn, reversed our judgment and remanded the case to us
for reconsideration.  Page v. State,
137 S.W.3d 75, 79 (Tex. Crim. App. 2004). 
We again reverse the judgment of the trial court.

I.  The Scope of The Remand

On direct appeal,
appellant contended the trial court violated Texas Rules of Evidence Rules 403
and 404(b) in admitting extraneous offense evidence.  See Tex.
R. Evid. 403, 404(b).  Although
both arguments were preserved for appellate review, we found it necessary to
address only the Rule 404(b) argument and determined the trial court abused its
discretion in admitting the complained-of evidence.  This determination was based upon two
independent holdings.  First, the
extraneous offense evidence was not admissible because the complainant was not
impeached on cross-examination regarding her identification of appellant.  Second, assuming the complainant had been
impeached, the impeachment was not related to a Amaterial detail@ of her identification of appellant.

The court of criminal
appeals disagreed with both of our holdings. 
Regarding the impeachment of the complainant the Court stated:








[D]efense counsel's
cross-examination of the victim suggested that his 265 pound client was not her
200 pound assailant.  Whether the
challenge was to her capacity to observe (i.e., she was mistaken) or her
truthfulness (i.e., she was lying), or both, the questions implied that the
identification of appellant was not trustworthy.  The question of whether defense counsel's
cross-examination of the victim raised the issue of identity may best be
answered with another question:  If it
was not about identity, what was it about? 
Defense counsel did not offer the trial court an alternative explanation
for his line of questioning, and none is apparent.  Counsel simply denied making identity an
issue.

See Page, 137 S.W.3d at 78-79
(footnote omitted).  On this basis, the
court of criminal appeals held the complainant had been impeached.  See id.

Regarding our Amaterial detail@ holding, the court of
criminal appeals stated:

The Court of Appeals
has also read too much into our past pronouncements regarding impeachment
relating to a Amaterial detail@ of
identification.  By Amaterial,@ we have simply meant
that the detail must be relevant to the reliability of the identification.  In minimizing the impact of the weight
discrepancy and in pointing to the strength of the State's other evidence, the
Court of Appeals has confused the relevance of the evidence with its
strength.  That the impeachment was not
particularly damaging or effective in light of all the evidence presented is
not the question.  The question is
whether impeachment occurred that raised the issue of identity.  If so, Rule 404(b) permits the introduction
of extraneous offenses that are relevant to the issue of identity.

 

Id. at 79.  Therefore, the court held the impeachment of
the complainant related to a Amaterial detail.@  Id.








Rather than simply
remand the case to us at this point, the court of criminal appeals provided us
with further guidance in the form of footnote 14 which states: AWhether the extraneous
offenses were in fact sufficiently similar to show identity was not addressed
by the Court of Appeals, and we do not address that question here.  See Lane [v. State] , 933 S.W.2d [504]
at 519 [(Tex. Crim. App. 1996)] (Aan extraneous offense
must be so similar to the offense charged that the offenses are marked as the
accused's handiwork@).  See id. at 79 n.14

Under Carroll v.
State, 101 S.W.3d 454 (Tex. Crim. App. 2003), courts of appeals are not
limited on remand to deciding the pertinent point of error based solely on the
explicit basis set out by the court of criminal appeals in its remand order.  See id. at 459.  However, in light of footnote 14, and the
fact that the briefs of the State and appellant begin with the issue suggested
in footnote 14, namely Awhether the extraneous
offenses were in fact sufficiently similar to show identity,@ we will begin our
analysis of this case with that issue.

II.  Rule 404(b) and Signature Offenses

Under Rule 404(b),
extraneous offense evidence may be admissible on the issue of identity.  See Tex.
R. Evid. 404(b).  However, the
simple fact that identity is at issue does not mean that extraneous offense
evidence is per se admissible.  Avila
v. State, 18 S.W.3d 736, 740-42 (Tex. App.BSan Antonio 2000, no pet.)  When an extraneous offense is offered to
prove identity, the common characteristics of each offense must be so unusual
and distinctive as to constitute the defendant=s Asignature.@  Taylor v. State, 920 S.W.2d 319, 322
(Tex. Crim. App. 1996); Lane, 933 S.W.2d at 519.








In Reyes v. State,
69 S.W.3d 725 (Tex. App.BCorpus Christi 2002,
pet. ref'd), our most recent pronouncement on the
subject, we found guidance in Ford v. State, 484 S.W.2d 727 (Tex. Crim.
App. 1972), where the court of criminal appeals recognized that, to some
extent, the commission of any particular offense will have some generic
qualities.  Reyes, 69 S.W.3d at
728; see Ford, 484 S.W.2d at 430-31.  In Ford, the court of criminal appeals
stated that:

[T]here will always be
similarities in the commission of the same type of crime.  That is, any case of robbery by firearms is
quite likely to have been committed in much the same way as any other.  What must be shown to make the evidence of
the extraneous crime admissible is something that sets it apart from its class
or type of crime in general, and marks it distinctively in the same manner as
the principal crime.

 

484 S.W.2d at
730-31.  Therefore, we concluded that Aeach case must be
measured on its own merits.  This
measurement must reveal some connective similarity, either in the singular or
plural, that rises to the level of a distinguishing characteristic common to
both the extraneous offense and the offense charged.@  Reyes, 69 S.W.3d at 738.  To make this measurement, we will review the
testimony of the complainant and the individuals involved in the two extraneous
offenses, and then analyze that testimony to determine if it rises to the level
required for admission under Rule 404(b).

A.  The Complainant








In the winter of 1997,
the complainant was working as a prostitute in Galveston when appellant pulled
up beside her driving a maroon vehicle. 
When the complainant approached, appellant flashed a badge, said he was
a police officer, and instructed the complainant to get into the vehicle.  The complainant complied, appellant placed
the badge above the sun visor, and the two drove away.  Appellant stopped the vehicle, got a police
radio from the trunk, and placed it in the back seat.  The complainant heard voices from a police
radio.  Appellant told complainant that
it was almost time for his shift change, and he did not want to take the
complainant to jail because of the paperwork. 
Appellant stopped his vehicle a second time and told the complainant she
would either have to perform oral sex on appellant or go to jail.  Appellant pulled the complainant=s head to his exposed
penis.  The complainant initially
performed oral sex on appellant, but stopped and said she would not continue
and appellant could take her to jail if he wished.  Appellant started his vehicle and returned to
the area where he met the complainant. 
Appellant let the complainant out of the vehicle and told her that she
should stay off the streets or she would be arrested by appellant=s partners whom he had
notified of the complainant.

B.  Erica Cavender[2]








Erica Cavender testified
that in the spring of 1997, she was working as a prostitute in Galveston when
she was approached by appellant who was driving a maroon vehicle.   Appellant identified himself as a police
officer, but never exhibited a badge, and asked Cavender to perform oral
sex.  Cavender heard a Apolice type radio@ in the car.  When Cavender asked how much money appellant
was willing to pay, he stated that he would pay her six or seven dollars.  Cavender refused to perform the sex act for
that amount and walked away.  Appellant
left, only to return and have another conversation with Cavender.  At this point, appellant said he would not
arrest Cavender if she would go with appellant. 
Cavender told appellant that she would take her chances, and appellant
left. 

C.  Angelina Edenfield

Around Labor Day of
1997, Angelina Edenfield was working as a prostitute in Galveston when she was
approached by appellant in a maroon vehicle. 
Appellant asked Edenfield how much she would charge to perform oral sex.  Edenfield asked appellant if he was a police
officer and appellant answered ANo.@  After the two fondled each other, Edenfield
got into appellant=s car and they drove
to East Beach.  Once there, appellant
pulled out a badge from the sun visor of his car, and told Edenfield that he
was a Texas City police officer working a sting operation in Galveston.  Appellant stated that he would not arrest
Edenfield if she performed sexual acts for him. 
Edenfield told appellant to either arrest her or pay her.  Appellant became irate and struck Edenfield.  At that point, Edenfield became fearful and
engaged in oral and vaginal intercourse with appellant.  Appellant then returned Edenfield to the area
where they met.

D.  Analysis








Each of the offenses
have the following generic qualities: the females were working as prostitutes
in Galveston in 1997, and they involve a male seeking performance of a sex
act.  The offenses also have several
specific qualities.  In each instance,
appellant identified himself as a peace officer and drove a maroon vehicle.  Each time appellant requested oral sex, and
threatened to arrest each female if they refused.[3]  However, there are many differences which
cannot be ignored.  For example, in the
charged offense appellant did not mention money in exchange for the sex act,
but in the offenses involving Cavender and Edenfield, money was discussed.

Additional differences
are found when the extraneous offenses are considered individually.  The most obvious difference in the Cavender
incident and the charged offense is that no sex act was involved.  This is a striking dissimilarity when the
Cavender extraneous offense evidence was offered, at least in part, to prove
the identity of the person who committed a sex act against the
complainant.  Additionally, with
Cavender, appellant identified himself as a peace officer, but he did not
display a badge as with the complainant and Edenfield.  Cavender did not enter appellant=s vehicle.  Appellant returned to solicit Cavender a
second time, but she again rejected his entreaties.  The only similarity the State advances is
that both the complainant and Cavender Aheard a police radio
in the appellant=s car.@  The Cavender incident is so dissimilar to the
charged offense that, on this basis alone, we hold the trial judge erred in
admitting this extraneous offense evidence.








However, we will
continue our analysis, and now consider the Edenfield incident.  The State argues this incident is similar to
the charged offense because appellant displayed a badge and took both women to Athe Seawall area.@  The first factor is a two-edged sword B while it shows a
similarity with the charged offense, it distinguishes the Edenfield incident
from the Cavender incident.  Regarding
the second factor, we do not give weight to the fact that the complainant and
Edenfield were taken to Athe Seawall area.@  This, we believe, is a generic quality of
prostitution; it is customary after soliciting a prostitute in a public area,
for the couple to drive to an isolated area to complete the sex act.

There are additional
differences between the Edenfield incident, the charged offense, and the
Cavender incident.  With Edenfield,
appellant initially denied being a peace officer, whereas with the complainant
and Cavender, he immediately identified himself as such.  Appellant and Edenfield fondled one another
prior to her getting into the vehicle. 
However, there was no fondling in either the charged offense or the
Cavender incident.  Appellant struck
Edenfield, but did not harm or threaten to harm the complainant or Cavender
when they rejected him.  Finally, unlike
the other two situations, there was no police radio in the Edenfield
incident.  While the facts of the
Edenfield incident are closer to the charged offense than the Cavender
incident, the decisional authority of this state clearly confirms that close is
simply not enough.  Owens v. State,
827 S.W.2d 911, 915 (Tex. Crim. App. 1992). 
The similarities between the extraneous offense and the charged offense
must be so Aunusual or
idiosyncratic as to signal conclusively that the two offenses were the
handiwork of the same individual.@  See id.  To hold otherwise would give too much weight
to the generic qualities inherent in the same type of offense, and too little
weight to the requirement that the offenses be committed in such a unique and
distinctive fashion as to constitute the signature of the defendant.  Ford, 484 S.W.2d at 730-31.  








After carefully
analyzing both the similarities and differences between the charged offenses
and the two extraneous offenses, we hold the extraneous offenses are not
sufficiently similar to identify either of them as the Asignature@ of appellant.  Reyes, 69 S.W.3d at 738; Avila,
18 S.W.3d at 740-42.  Accordingly, the
evidence of the Cavender and Edenfield incidents was not admissible under Rule
404(b), and therefore, the trial court abused its discretion in admitting this
evidence.[4]

III.  Harm and the Law of the Case

On direct appeal, we
held that the error in admitting the extraneous offense evidence had a
substantial and injurious effect or influence on the jury=s verdict under Texas
Rule of Appellate Procedure 44.2(b).  Page,
88 S.W.3d at 766.  The State did not
petition the court of criminal appeals for review of our decision on the
question of harm, and the court of criminal appeals did not address our
treatment of the issue of harm on its own motion. 








The law of the case
doctrine provides that an appellate court's resolution of a question of law in
a previous appeal of the same case will govern the disposition of the same
issue should there be another appeal.  Ware
v. State, 736 S.W.2d 700, 701 (Tex. Crim. App. 1987).  This is a flexible, court-made doctrine Aintended to achieve
uniformity of decision as well as judicial economy and efficiency.@  Hudson v. Wakefield, 711 S.W.2d 628,
630 (Tex. 1986).  We hold the law of the
case doctrine applies to cases on remand when a question of law has previously
been settled on direct appeal, unless that question of law has become unsettled
by the court=s reconsideration on
remand.  

Assume a court of
appeals found an issue was not preserved for appellate review, and the court of
criminal appeals subsequently remanded that case to the court of appeals to
reconsider the preservation determination. 
If on remand, the court of appeals determined the issue was preserved,
the logical and necessary consequence of that determination would be to address
the merits of that argument.  However, if
on remand the court of appeals reaffirmed its earlier determination that the
issue was not preserved for appellate review, that court would not be required
to address the merits of a non-preserved point of error.  Our holding will achieve the goals of Hudson,
that is, uniformity of decision and judicial economy and efficiency.

We now apply this
holding to the instant case.  On direct
appeal we held the trial judge erred in admitting the extraneous offense
evidence.  The court of criminal appeals
remanded the case for reconsideration of that holding only.  We have done so, and reach the same
conclusion.[5]  Consequently, we need not reconsider our
previous determination of harm.








Having fully complied
with the remand order of the court of criminal appeals, we again reverse the
judgment of the trial court in cause numbers 98CR0911 and 98CR0913 and remand
for further proceedings consistent with this opinion.

 

                                                   


CHARLES F. BAIRD

Justice

 

 

Publish.  

Tex.
R. App. P.
47.2(b).

 

Opinion On Remand
delivered and filed this the

4th day of August,
2005.











[1]
Former Court of Criminal Appeals Judge Charles F. Baird assigned to this Court
by the Chief Justice of the Supreme Court of Texas.  See Tex.
Gov=t
Code Ann. '
74.003 (Vernon 2005).





[2]  It is the author=s
policy to not refer to complainants by name. 
However, because of the circumstances presented in this case that policy
was not followed on direct appeal and cannot be followed now.





[3]Appellant
also engaged in sexual intercourse with Edenfield.





[4] In
this context, abuse of discretion does not imply intentional wrong or bad
faith, or misconduct, but means only an erroneous conclusion.  Hebert v. State, 836 S.W.2d 252, 255
(Tex. App.BHouston
[1st Dist.] 1992, pet. ref=d) (citing Webb v. State,
684 S.W.2d 800, 802 (Tex. App.BFort Worth 1985, no pet.).





[5]Having
determined the extraneous offense evidence was not admissible under Rule
404(b), we need not address appellant Rule 403 argument.