

## In The

## Court of Appeals

## Seventh District of Texas at Amarillo

_____

No. 07-12-00198-CR
No. 07-12-00199-CR
_____

JEREMY HOUSTON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 331st District Court
Travis County, Texas
Trial Court Nos. D-1-DC-10-204916 & D-1-DC-10-204917;
Honorable David Crain, Presiding

September 17, 2013

MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Jeremy Houston, was convicted following a jury trial of burglary and attempted burglary of a habitation, each enhanced by a prior felony conviction.[1] He was sentenced to thirty years and twenty years confinement respectively, with the two

---

[1]Cause Nos. D-1-DC-10-204916 (burglary) and D-1-DC-10-204917 (attempted burglary). See TEX. PENAL CODE ANN. §§ 15.01(a), 30.02(a)(1) (West 2011). As charged, the offenses were punishable as a first degree felony and a second degree felony, respectively. See id. at 12.42(a) & (b), 15.01(d), 30.02(c)(2), (West 2011 & West Supp. 2012).

sentences to be served concurrently. By four issues, Appellant asserts the evidence was insufficient to convict him of (1) burglary and (2) attempted burglary of a habitation, and (3) and (4) the trial court erred by admitting extraneous offense evidence to establish identity. We affirm. For purposes of logical analysis, we will address issues three and four before turning to issues one and two.

BACKGROUND

Appellant was indicted for burglary of the residence of Lynette Cabrera, the complainant in Cause No. D-1-DC-10-204916, and attempted burglary of the residence of Ryan Schultz, the complainant in Cause No. D-1-DC-10-204917. At trial the evidence showed that at approximately 11:00 a.m., on the morning of August 19, 2010, a neighbor of Cabrera and Schultz heard a loud bang or crash while he was painting in his backyard. He looked across the street over his fence and observed a large black male moving from Schultz's residence to Cabrera's residence. Schultz's door had been kicked in. Both locks were smashed and the frame was cracked. Evidence later established that Schultz's dog, a Boxer, was in the home at the time.

As the neighbor watched, a Hispanic male wearing a black tank top, tan shorts, and white tennis shoes emerged from a white SUV parked in Cabrera's driveway. The black male was wearing a sweat-stained gray t-shirt, dark blue or black shorts, and black shoes. The Hispanic male held open Cabrera's screen door while the black male attempted to kick the front door in. After a couple of running leaps, the black male managed to kick in Cabrera's front door. The neighbor called 911. Although the neighbor was not close enough to see the black male's face, he described his build as

2

that of a large muscular male. At trial, he identified Appellant's build as the same general build as the man he saw kick the door in.

Within minutes, Deputy Santiago Salazar of the Travis County Sheriff's Office arrived and discovered that Cabrera's front door had been kicked in. The house was empty and the white SUV was still in the driveway with its engine running. Salazar observed that the house had been rummaged through, items were scattered about, and bedroom drawers had been emptied. Near the front door, he noticed a television, guitar and two leather jackets.

Deputy Curtis Orton also responded to the dispatch of a burglary in progress. However, before he arrived at Cabrera's house, he spotted a man who matched the description of the potential burglar given to him by dispatch. Deputy Orton pulled behind the man, approached him, and struck up a conversation. The man was later identified as Appellant. Orton observed that, at the time, Appellant was sweating profusely. When asked, Appellant indicated someone dropped him off and he was looking for a friend's house, however, he did not know who dropped him off or where the friend's house was located. Deputy Orton decided to detain Appellant for further investigation and began to handcuff him. He had one handcuff on when Appellant broke away and fled.

Within minutes, another deputy, Jeffrey Smith, observed Appellant walking down the sidewalk. Based upon the description he received from dispatch, he pulled across the street alongside Appellant. Appellant turned around and raised his hands up.

Deputy Smith could see handcuffs dangling from Appellant's wrist. In addition to Appellant, the deputies also arrested two Hispanic males.

At trial, identity of the perpetrator was a contested issue.[2] For the purpose of circumstantially establishing identity, the State sought to present evidence of an extraneous offense that occurred approximately six months later. In that offense, Appellant was arrested for burglary of a habitation. At the time of his arrest he was driving a car with two Hispanic passengers and he had just committed a burglary in a residential neighborhood at approximately 10:45 a.m. The frame on the door had been broken and there was a footprint near the door handle. The house had been rummaged through, drawers emptied, and items scattered throughout the house. In the trunk of his car, officers found electronic items—television, computers, and a sound bar belonging to the burglarized homeowner. After stopping Appellant's car, the deputy attempted to handcuff him when he pulled away, fled and was subsequently apprehended. He was wearing a dark jacket, shorts and tennis shoes. Over Appellant's objection, the trial court admitted the extraneous offense evidence.

EXTRANEOUS OFFENSE EVIDENCE

In his third issue, Appellant contends the trial court erred in admitting evidence of the second burglary because it was not sufficiently similar to the charged offenses to amount to a "signature" offense. See TEX. R. EVID. 404(b). In his fourth issue, he contends that, even if evidence of the second burglary was admissible under Rule 404(b), the trial court still erred in admitting the evidence because its probative value

---

[2]"When the identity of the perpetrator can be established by circumstantial evidence only, identity is a contested issue even if the defense rests with the State, puts on no evidence and raises no defensive theories." *Devoe v. State,* 354 S.W.3d 457, 470-71 (Tex.Crim.App. 2011).

4

was substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. The State sought admission of the second burglary under Texas Rule of Evidence 404(b) asserting that the crimes had a unique "signature." The State asserts the extraneous offense was more probative than prejudicial, therefore, admissible to show identity of the accused. *See* TEX. R. EVID. 403, 404(b).

STANDARD OF REVIEW

We review the trial court's decision to admit evidence of extraneous acts for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1991) (op. on reh'g). A trial court's ruling should only be reversed as an abuse of discretion when the decision lies outside the zone of reasonable disagreement. *Robbins v. State*, 88 S.W.3d 256, 260 (Tex.Crim.App. 2002). Trial courts have broad discretion in their evidentiary rulings because they "are usually in the best position to make the call on whether certain evidence should be admitted or excluded." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997).

ANALYSIS

Evidence of an extraneous offense is admissible to prove identity, when identity is an issue, only if there is some distinguishing characteristic common to both the extraneous offense and the offense for which the accused is on trial. *Ransom v. State*, 503 S.W.2d 810, 814 (Tex.Crim.App. 1974). The common distinguishing characteristic may be proximity in time and place or the common mode of commission of the offenses. *Id.* at 813 (citing *Ford v. State*, 484 S.W.2d 727, 729 (Tex.Crim.App. 1972)). To be admissible for the purposes of showing identity, the acts sought to be admitted must be

"so similar to the offense charged that the accused's acts are marked as his handiwork, that is, his 'signature' must be apparent from a comparison of circumstances in both cases." *Bishop v. State*, 869 S.W.2d 342, 346 (Tex.Crim.App. 1993).

Here, identity was an issue and the extraneous burglary was nearly identical to the offenses-at-issue. The extraneous burglary was carried out in a similar neighborhood, at nearly the same time of day, with an identical number of perpetrators, of the same ethnic background, and in the same fashion (the front door was kicked in). In addition, the stolen items were similar (electronics) and, Appellant's response to being arrested was similar (when the deputy attempted to handcuff him, he broke away and fled).

While admission of the extraneous offense evidence was inherently prejudicial due to the posture of Appellant, the same may be said of any such "signature" evidence which is probative of a crime for which a criminal defendant stands accused. Given the facts of the case before us, the fact that identification was an issue during trial, and the high degree of similarity between the offenses, we agree with the trial court's analysis that the probative value of the extraneous evidence outweighed its prejudicial or inflammatory effect. *See Ransom,* 503 S.W.2d at 812-13. This is particularly so given that the trial court gave a cautionary instruction before the evidence was admitted at trial, the jury charge contained an extraneous offense instruction, the State devoted a substantial portion of its closing argument to the jury's responsibility to follow the extraneous offense instruction, and defense counsel highlighted the same in his closing argument.

Taking all of the above facts into consideration, we find the existence of sufficient common distinguishing characteristics between the extraneous and primary offenses to tip the balance in favor of admitting the extrinsic probative evidence going to the contested, material issue of identification. Accordingly, Appellant's third and fourth issues are overruled.

## SUFFICIENCY OF THE EVIDENCE

In his first and second issues, Appellant asserts the evidence at trial was insufficient as a matter of law because there is no direct evidence he entered the residence of Lynette Cabrera (Issue One), or opened the door at the residence of Ryan Schultz (Issue Two). We disagree.

### STANDARD OF REVIEW

In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all the evidence in a light most favorable to the verdict and determine, based on that evidence and the reasonable inferences drawn therefrom, whether a fact-finder could have found the essential elements of the crime beyond a reasonable doubt. *Lucio v. State,* 351 S.W.3d 878, 894 (Tex.Crim.App. 2011) (citing *Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 5560 (1979)); *Brooks v. State,* 323 S.W.3d 893, 895 (Tex.Crim.App. 2010). In conducting our review, we do not sit as a thirteenth juror and may not substitute our judgment for that of the fact-finder by re-evaluating the weight and credibility of the evidence. *Isassi v. State,* 330 S.W.3d 633, 638 (Tex.Crim.App. 2010). Rather, we defer to the fact-finder to fairly

7

resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts. *Id.*

Further, circumstantial evidence alone is sufficient to establish the guilt of the accused and the standard of review as to the sufficiency of evidence is the same for both direct and circumstantial evidence cases. *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). Each fact need not point directly and independently to the guilt of the accused, so long as the cumulative force of all the evidence, coupled with reasonable inferences to be drawn therefrom, is sufficient to support the conviction. *Evans v. State,* 202 S.W.3d 158, 166 (Tex.Crim.App. 2006).

BURGLARY AND ATTEMPTED BURGLARY

A person commits the offense of burglary of a habitation if, without the effective consent of the owner, he enters a habitation with the intent to commit a felony, theft, or an assault. TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011). A person "enters" a habitation if he or she intrudes any part of their body, or any physical object connected to their body. *Id.* at § 30.02(b). "Entry" is established when the plane of the opening of the house is broken, and may be accomplished by placing a foot inside a door frame, by cutting window or door screens, or by breaking a door lock or frame. *Martinez v. State,* 304 S.W.3d 642, 660 (Tex.App.—Amarillo 2010, pet. ref'd) (citing *Ortega v. State,* S.W.2d 746, 747 (Tex.Crim.App. 1981)). The entry element of a burglary offense may be proven by inferences, just as inferences may be used to prove the elements of any other offense. *Lopez v. State,* 884 S.W.2d 918, 921 (Tex.App.—Austin 1994, pet. ref'd). Moreover, section 30.02 "does not require proof of a completed theft; all that needs be

8

shown is an *attempt* to commit a felony or theft." *Martinez,* 304 S.W.3d at 660 (citing *Williams v. State,* 997 S.W.2d 415, 418 (Tex.App.—Beaumont 1999, no pet.) (emphasis supplied).

To prove attempted burglary, the State must establish that Appellant, with the requisite intent, did an act, amounting to more than mere preparation to enter the habitation, which tended, but failed, to effect the commission of burglary of a habitation. *See* TEX. PENAL CODE ANN. § 15.01(a) (West 2011). *See also Roach v. State*, 635 S.W.2d 169, 170 (Tex.App.—San Antonio 1982, no pet.). The State need not show that "anything was *taken* from the building, but only that there was an *attempted* breaking and entering with the intent to commit the taking or theft." *Salinas v. State,* 721 S.W.2d 538, 540 (Tex.App.—Corpus Christi 1986, pet. ref'd) (emphasis supplied).

ANALYSIS

Viewing the evidence in a light most favorable to the verdict and drawing all reasonable inferences therefrom, we find the evidence legally sufficient to support Appellant's convictions for burglary and attempted burglary. The front doors of Cabrera's and Schultz's residences were damaged when Appellant kicked them in. Cabrera's house had been rummaged through while a television, guitar, and two leather jackets were removed from their accustomed locations and placed near the front door. Appellant fit the neighbor's description of one of the burglars and, at trial, the neighbor testified Appellant had the same general build as the black male burglar. *See Livingston v. State*, 739 S.W.2d 311, 329-30 (Tex.Crim.App. 1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988) ("The fact that a witness cannot

9

give a positive identification of another person goes to the weight of his testimony, not to its admissibility; therefore, the lack of positive identification is a jury issue.") Appellant was found in the immediate vicinity of the burgled houses; *Roach,* 635 S.W.2d at 170 (presence is a circumstance tending to prove guilt), and provided evasive responses when questioned by Deputy Orton. *See Gear v. State,* 340 S.W.3d 743, 747 (Tex.Crim.App. 2011) (implausible and inconsistent statements to officers may be considered as affirmative evidence of guilt). He also resisted Deputy Orton's efforts to handcuff him and fled. *Devoe,* 354 S.W.3d at 470 ("[F]light is admissible as a circumstance from which an inference of guilt may be drawn."). *See Clayton v. State,* 235 S.W.3d 772, 780 (Tex.Crim.App. 2007).

Moreover, as discussed above, we find that evidence of the extraneous burglary committed six months later was so similar to the offenses-at-issue that the offenses are marked by Appellant's handiwork, providing additional, albeit circumstantial evidence of identity. *See Lane v. State,* 933 S.W.2d 504, 519 (Tex.Crim.App. 1996). Based on consideration of these facts, we find that a reasonable fact-finder could have found the essential elements of each crime beyond a reasonable doubt. Accordingly, Appellant's first two issues are overruled. *See Martinez,* 304 S.W.3d at 660; *Salinas,* 721 S.W.2d at 539-40; *Roach,* 635 S.W.2d at 169-71.

CONCLUSION

The trial court's judgments are affirmed.

Patrick A. Pirtle
Justice

Do not publish.

10