**Opinion filed March 20, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00110-CR

_____

## ROBERT STEVEN DUDLEY, Appellants

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 244th District Court**

**Ector County, Texas**

**Trial Court Cause No. C-37,722**

## M E M O R A N D U M   O P I N I O N

The jury found Robert Steven Dudley guilty of aggravated robbery. After it found "true" as to one enhancement paragraph, the jury assessed Appellant's punishment at confinement for ninety-nine years. The trial court sentenced him in accordance with the verdict. In one issue, Appellant challenges the trial court's

admission of extraneous offense evidence because identity was not yet at issue and because the extraneous robbery was not sufficiently similar to constitute a signature. We affirm.

Appellant was indicted for the aggravated robbery of Michelle Perkins, a clerk at a Chevron convenience store in Odessa. The robbery occurred on or about December 2, 2008. Perkins testified that she was preparing to close the store around 10 p.m. and had gone to the back of the store to wash some pots and pans when she heard the door beeper. Two men had entered the store, and when Perkins went to the back of the store to turn off the water, she heard the door beeper again. A third man had entered the store. All three men were wearing hoodies, and they separated from each other after they were inside the store.

Perkins began to feel nervous because the men were acting suspiciously. Perkins started toward the door to go outside and smoke a cigarette. At the same time, one of the men went to the counter and asked Perkins for cigarettes; she went behind the counter to get the cigarettes. After she got the cigarettes, she turned around to ask the man for his ID, and he was pointing a handgun at her. He ordered her to "open it." Perkins took the drawer out of the cash register, set it on the counter, and turned away. She heard the man take the money and leave. As he was walking out the door, he asked Perkins, "[I]s that all of it?" and when Perkins indicated that it was, the men left.

The store manager turned the store's security surveillance footage over to the police. Detective Michael Liverett of the Odessa Police Department was assigned to investigate the robbery. Detective Liverett obtained a snapshot of the robber's face from the surveillance footage and showed the photograph to other officers. Sergeant Robin Smith immediately recognized the robber and told Detective Liverett that the robber was Appellant. Corporal Detective Afton White of the Odessa Police Department also identified the robber as Appellant.

2

Detective Liverett questioned Appellant. Although he never admitted that he committed the robbery, Appellant asked whether the detective could make a deal with the district attorney in exchange for the names of the accomplices. After he talked to Appellant, Detective Liverett showed Perkins a photo array, and she selected Appellant's picture from the lineup as the person who robbed her at gunpoint.

During Appellant's trial, the trial court admitted evidence that Appellant had committed another robbery on November 26, 2008, at the Smoker's Outlet. The State offered the extraneous offense for the purpose of proving identity.

On the date of the robbery at Smoker's Outlet, Megan Nicholas was training a new cashier, Carla Harris. A man came into the store around 10 p.m. to purchase "rolling papers." While the man was purchasing "rolling papers," Nicholas went outside to meet the store manager in the parking lot. While Nicholas was outside and after the man paid for his purchase, he pulled out a gun, aimed it at Harris, and told her to "give it all to me." Harris began backing away from the counter, and the robber went to the cash register and fought with her. Harris yelled for Nicholas, and Nicholas ran inside and pushed the panic button. The robber grabbed money from the register and fled. Appellant was convicted of the Smoker's Outlet robbery.

In his sole issue, Appellant makes two complaints about the admissibility of the prior robbery conviction under TEX. R. EVID. 404(b). Appellant contends that the trial court erred when it prematurely admitted the extraneous offense evidence during the State's case-in-chief because identity was not then an issue in the case. The State argues that "Appellant opened the door to identity prior to the admission of the extraneous robbery" during his cross-examination of Sergeant Matt Davidson.

3

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). We will reverse a trial court's ruling only if it is outside the "zone of reasonable disagreement." *Id.*

The general rule is that a defendant is to be tried only for the offense charged, not for any other crimes or for being a criminal generally. *Segundo v. State,* 270 S.W.3d 79, 87 (Tex. Crim. App. 2008). However, evidence of extraneous acts of misconduct may be admissible if the uncharged act is relevant to a material issue in the case and the probative value of that evidence is not significantly outweighed by its prejudicial effect. *Id.* Although not an exclusive list, some of the exceptions to the general rule include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." TEX. R. EVID. 404(b).

"An extraneous offense may be admissible to show identity only when identity is at issue in the case." *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006). The issue of identity can be raised by the defense on cross-examination when the identifying witness is impeached on a material detail of the identification, the conditions surrounding the identification, or an earlier misidentification. *Siqueiros v. State*, 685 S.W.2d 68, 71 (Tex. Crim. App. 1985). If an extraneous offense is improperly admitted during the State's case-in-chief, "subsequently admitted evidence can render the error harmless." *Id.* If the defense raises the issue of identity after the evidence was erroneously admitted, "the extraneous offense becomes admissible and the earlier error becomes harmless. *Id.*

During cross-examination of the witnesses, Appellant challenged the eyewitness's description based on race, hair color, facial hair, and the type of weapon. Perkins told Sergeant Davidson that the suspects were a black male and two Hispanic males. Although Appellant is white, Perkins testified that he

4

appeared to be Hispanic based on his dark facial hair. In the photo array, Appellant had facial hair. Appellant had facial hair at the time he was interviewed by detectives, and all of the suspects in the photo array had facial hair. Perkins had not told Sergeant Davidson that the suspect had facial hair. Defense counsel asked Perkins several times why she had changed her description of the race of the suspects and questioned her experience and ability to identify the weapon. When defense counsel questioned Perkins about how she identified Appellant through a photo lineup, defense counsel stated, "I'm not questioning you [about whether] you were held up, I'm questioning whether or not your identification is correct."

During closing argument, defense counsel argued that Perkins told Sergeant Davidson that there were two black males and one Hispanic male, but after choosing Appellant from a photo array and learning that he was white, she changed her story. Counsel further argued that he could tell which jurors were Hispanic and that Perkins should be able to identify a Hispanic person from her experience working at a convenience store. Appellant's trial counsel also argued that the weapon recovered in a search of Appellant's home was not the same weapon used in the robbery. Additionally, defense counsel also challenged the identity of Appellant as the robber depicted in the surveillance photos from the robbery at the Smoker's Outlet. His challenge was based upon the observation that the suspect had blond hair and no facial hair.

Appellant also vigorously challenged the photo array. Defense counsel attempted to establish that Detective Liverett showed Perkins a large picture of Appellant before showing her the photo array, but Perkins clarified on redirect examination that Detective Liverett showed her the photo array first. During closing argument, defense counsel read back Perkins's testimony to the jury and then argued that "[Detective] Liverett lied to you when he said that he did not do anything to try to get Ms. Perkins to identify Mr. Dudley."

5

All of the foregoing leads us to conclude, and we do conclude, that Appellant raised the issue of identity.

We now address Appellant's second contention that the extraneous offense is not sufficiently identical to the charged offense to allow for its admission. "Merely raising the issue of identity does not automatically render the extraneous evidence admissible." *Page*, 213 S.W.3d at 336. When an extraneous offense is introduced to prove identity, there must be some distinguishing characteristics common to both the extraneous offense and the charged offense. *Martin v. State*, 173 S.W.3d 463, 468 (Tex. Crim. App. 2005). To be admissible for this purpose, the common characteristics of the charged offense and the extraneous offense must be so unusual that the characteristics act as the defendant's "signature." *Taylor v. State*, 920 S.W.2d 319, 322 (Tex. Crim. App. 1996). The "signature" must be evident when we compare the circumstances in both cases. *Bishop v. State*, 869 S.W.2d 342, 346 (Tex. Crim. App. 1993). "No rigid rules dictate what constitutes sufficient similarities; rather, the common characteristics may be proximity in time and place, mode of commission of the crimes, the person's dress, or any other elements which mark both crimes as having been committed by the same person." *Segundo*, 270 S.W.3d at 88.

As an initial matter, we must first address the arguments of both parties related to what evidence properly and sufficiently connects the two offenses in this case. Appellant argues that the mere use of a firearm is too common to use as a factor to connect the offenses. Appellant relies on *Ford v. State*, 484 S.W.2d 727 (Tex. Crim. App. 1972), to support his contention. In *Ford*, the court held that the extraneous offense evidence should not have been admitted and reasoned that "[w]hat must be shown to make the evidence of [an] extraneous crime admissible is something that *sets it apart from its class or type of crime in general*, and *marks it distinctively in the same manner* as the principal crime." 484 S.W.2d at 730

6

(emphasis added). The court explained that "a different result might be reached" if there had "been evidence that the same pistol had been used in both robberies." *Id.*

Although Perkins identified one of the BB guns that had been recovered from Appellant's vehicle as similar to the one used in the charged offense, Nicholas and Harris were not asked whether the BB gun was similar to the gun used in the Smoker's Outlet robbery. We agree with Appellant that the fact that pistols were used in both crimes is not a distinguishing characteristic that supports admissibility because there is no evidence tying the gun to both robberies. *See id.*

The State argues that the robberies "were in close proximity to one another." The only evidence in the record that indicates the geographic relation between the robberies is testimony that the detectives were investigating "robberies committed in the area." But no one testified that the stores were in the same neighborhood.

The State argues that the two stores are 1.43 miles apart "according to the MapQuest.com." However, this evidence is not in the record. An appellate court may take judicial notice for the first time on appeal. *Hayden v. State*, 155 S.W.3d 640, 647 (Tex. App.—Eastland 2005, pet. ref'd); *see also* TEX. R. EVID. 201(f). "To be judicially noticed, adjudicative facts must be relevant to the ultimate matter in dispute, but not be the subject of any controversy themselves." *Kubosh v. State*, 241 S.W.3d 60, 64 (Tex. Crim. App. 2007) (citing *Watts v. State*, 99 S.W.3d 604, 610 (Tex. Crim. App. 2003)). We take judicial notice that the extraneous robbery occurred 1.43 miles from the charged robbery in this case. We agree with the State that the close proximity of the stores should be considered when determining whether the offenses are sufficiently connected. *See Chavez v. State*, 794 S.W.2d 910, 914 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd) (considering that "the sexual assaults all occurred in Rosenberg, Texas," as a factor supporting the admissibility of extraneous offenses to prove identity).

The State also argues that both "robberies were of similar 'convenience store' businesses." At trial, Appellant introduced evidence that a lot of convenience stores in Odessa are robbed, and he argued that there is nothing unusual about a convenience store robbery.

While we agree that this fact alone would not constitute a "signature," the fact that they were both convenience store robberies, rather than one being a bank robbery or a residential burglary, can be considered as a factor in whether there was a common mode in the commission of the offenses. *See Ransom v. State*, 503 S.W.2d 810, 813 (Tex. Crim. App. 1974) (distinguishing robberies on a residential street from robberies at "various retail stores" or "nightclubs" because the exact modus operandi was not repeated).

Here, both robberies were of convenient stores, and there were other similar characteristics. When Appellant and his two accomplices entered the Chevron station around 10 p.m., Appellant approached the counter and asked the clerk for a pack of cigarettes. When the clerk turned around to retrieve them, Appellant pulled out his gun, aimed it at her, and said, "[O]pen it." After taking the money, Appellant asked, "[I]s that all of it?" and left. Similarly, when Appellant went into Smoker's Outlet, he purchased "rolling papers." When the second clerk exited the store as he was making his purchase, Appellant pointed his gun at the remaining clerk and told her to "give it all to me." As Appellant was taking the money from the drawer of the cash register, the other clerk returned, and Appellant fled. We also recognize that there were some differences in the mode of commission, namely that Appellant acted alone in the extraneous robbery but had two accomplices in the charged offense.

Appellant concedes that the offenses are similar in that they occurred six days apart and in that both suspects wore a hoodie, but he argues that these two facts alone do not sufficiently connect the offenses.

After a review of the record, we conclude that the following facts are similar between the charged offense and the extraneous offense: (1) the robberies occurred six days apart; (2) both robberies occurred shortly after 10 p.m.; (3) the robberies occurred in the same area; both businesses were convenience stores; (4) the suspects in both robberies were wearing the same type of zip-up hoodies; and (5) both robberies occurred when only one clerk was present inside the store.

Because Appellant raised the issue of identity and because of the similarities between the offenses, we cannot conclude that the trial court's ruling was outside the zone of reasonable disagreement. In view of the record before us, we conclude that the trial court did not abuse its discretion when it admitted the extraneous offense evidence. Appellant's sole issue on appeal is overruled.

We affirm the judgment of the trial court.


JIM R. WRIGHT
CHIEF JUSTICE


March 20, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.