Affirmed and Majority and Concurring Opinions filed January 19, 2006









Affirmed and Majority and Concurring Opinions filed January 19, 2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01298-CR

____________

 

GLENN
THOMAS PRINCE, Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

________________________________________________________

 

On Appeal from the 262nd District Court

Harris County, Texas

Trial Court Cause No. 892174

________________________________________________________

 

C O N C U R R I N G   O P I N I O N

The court correctly determines
that the trial court did not abuse its discretion by admitting evidence of the
two 1992 aggravated-robbery offenses, but the majority does not inquire as to
whether appellant put his intent in issue and employs a similarity analysis
more appropriate to the identity issue. 
Nonetheless, the court properly affirms the trial court=s
judgment.








Although relevant, Aevidence
of other crimes, wrongs or acts is not admissible to prove the character of a
person in order to show action in conformity therewith.@  Tex. R. Evid.
404(b).  However, extraneous offenses may
be admissible to show Amotive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident.@  Id.; Montgomery v. State, 810
S.W.2d 372, 387B88 (Tex.
Crim. App. 1991) (op. on reh=g).  Extraneous-offense evidence is also
admissible to rebut defensive theories raised by the State=s
witnesses during cross‑examination. 
Ransom v. State, 920 S.W.2d 288, 301 (Tex. Crim. App. 1994).  But merely introducing evidence for a purpose
other than character conformity, or any of the other enumerated purposes in
Rule 404(b), does not, by itself, make that evidence admissible.  Rankin v. State, 974 S.W.2d 707,
709 (Tex. Crim. App. 1996).  The
extraneous-offense evidence also must be relevant to a Afact of
consequence@ in the case.  Id. 
AExtraneous offense evidence may be
relevant to more than one issue.@ 
Taylor v. State, 920 S.W.2d 319, 323 (Tex. Crim. App. 1996).  The disputed evidence in this caseCan aggravated robbery and attempted
aggravated robbery committed nearly ten years after the charged offenseCwas offered for several purposes and
admitted for virtually all purposes identified in Rule 404(b).








The State offered the 1992
aggravated robbery offenses as admissible to prove motive, identity, intent,
and Alack of
mistake on part of the officers,@ and to
rebut the defensive theory that the charged capital murder was a party
offense.  Appellant objected to the
admission of this extraneous-offense evidence under Texas Rules of Evidence 403
and 404.  The trial court initially found
the 1992 aggravated robberies were relevant for some of the purposes listed in
the second sentence of Rule 404(b), i.e. that they tended to show motive,
intent, opportunity, and lack of mistake, and that the probative value of this
extraneous-offense evidence outweighed its prejudicial effect.  After making these rulings, the trial court
granted appellant a running objection to the evidence on extraneous offenses
and then instructed the jury that they could consider the evidence for
virtually all of the purposes mentioned in Rule 404(b):[1]


The Court:  All right. 
Ladies and gentlemen, I want to give you an instruction now regarding
evidence that you will soon hear.  You
are instructed if there is any evidence before you in this case regarding the
defendant=s committing an alleged
offense or offenses other than the offense charged against him in the
indictment in this case, you cannot consider such evidence for any purpose
unless you find and believe beyond a reasonable doubt that the defendant
committed such other offense or offenses, if any, and even then you may only
consider the same in determining the motive, opportunity, intent, preparation,
plan, knowledge, identity or absence of mistake or accident of the defendant,
if any, in connection with the offense, if any, alleged against him in the
indictment and for no other purpose.

A juror:  Would you rephrase that in a
short sentence? 

The Court:  You will have that in the charge.  Basically, if you hear evidence of another
crime or wrong that is alleged to have been committed by the defendant, you
may not consider that for any purpose other than determining motive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident of the defendant, if any, in connection with this offense.  And you may only consider it if you believe
the other crime or wrong beyond a reasonable doubt.  You will [sic] given this in the charge that
you have to take back with you. [2]

 

 













When, as in this case, a limiting instruction is requested,[3] the trial court Ashould instruct the jury that the
evidence is limited to whatever specific purpose the proponent advocated.@ 
Taylor v. State, 920 S.W.2d 319, 323 (Tex. (Tex. Crim. App.
1996).  The above instruction did not
limit the jury=s consideration to the
specific purposes advocated by the StateCmotive,
identity, intent, and lack of mistake on part of the officers, and to rebut the
defensive theory that the charged capital murder was a party offense.  Nor did the instruction limit the jury=s consideration to the purposes the
trial court mentionedCmotive, intent, opportunity, and
lack of mistake.  Instead, the trial court instructed the jury that they
could consider the extraneous offenses in determining not only motive, opportunity,
intent, identity, and lack of mistake, but also preparation, plan, knowledge,
and accident, if any.[4]  The trial court erred to the extent it
instructed the jury that it could consider the extraneous offenses for purposes
that were neither advocated by the proponent of the evidence nor relevant to
any issue raised. 

The only purpose the majority
opinion addresses is intent; however, the majority=s
analysis, which focuses on the mode of committing the offenses and the
circumstances surrounding the charged offense, pertains more to identity. 

Evidence of an extraneous offense
may be admissible to show identity when identity is an issue in the case.  Lane v. State, 933 S.W.2d 504, 519 (Tex.
Crim. App. 1996). However, for the extraneous offenses to be admissible to show
identity, there must be a showing that the extraneous offense committed by the
accused was so nearly identical in method to the charged offense as to earmark
it as the Ahandiwork of the accused.@  Bishop v. State, 869 S.W.2d 342, 346
(Tex. Crim. App. 1993).  The
characteristics must be so unusual and distinctive as to be like a signature.  Taylor, 920 S.W.2d at 322 (holding
that when an extraneous offense is offered to prove identity, the common
characteristics must be so unusual and/or distinctive as to be like a Asignature@); Bishop
v. State, 869 S.W.2d 342, 346 (Tex. Crim. App. 1993); Avila v. State,
18 S.W.3d 736, 740 (Tex. App.CSan
Antonio 2000, no pet.) (holding that, although the two offenses shared general
similarities, they were not substantial enough to warrant the admissibility of
the extraneous conduct testimony).  In
determining similarity of the offenses for the purpose of establishing
identity, the court must take into account both the specific characteristics of
the various offenses and the time interval between them.  Johnson v. State, 68 S.W.3d 644, 651 (Tex.
Crim. App. 2002). 








In this case, the majority
concludes that the indicted and extraneous offenses were alike in several ways
and notes the following
similarities: 

$                  
all three offenses were committed with a blunt instrument or a knife; 

$                  
all three offenses were committed at convenience stores; 

$                  
all three offenses were committed in Harris County; 

$                  
all three offenses were committed by an individual acting alone; 

$                  
in two of the incidents, bills but not coins were taken; 

$                  
in all three offenses, nothing was stolen from the store clerk; and 

$                  
in all three offenses the perpetrator drove away very quickly.  

 

Though it is true that comparisons can be
drawn and similarities identified, the similarities noted by the majority are
not the type of similarities Texas jurisprudence recognizes as a Adefendant=s
handiwork@ because they are not at all
distinctive.  All of the conduct in
question occurred at Houston-area convenience stores, but there is nothing in
this case that would serve as the Asignature@ of the
perpetrator and thereby affirmatively link the charged offense (the 1982
capital murder) to the extraneous offenses (the 1992 aggravated robbery and
attempted aggravated robbery) for identity purposes.  The 1992 extraneous offenses are simply
garden-variety convenience-store robberiesCnot Asignature@ crimes.

The probity of evidence of other crimes, when introduced for
purposes of identity, depends upon both the uniqueness of the modus operandi
and the degree of similarity between the charged offense and the extraneous
offenses.  Here, the modus operandi was
not unique or distinctive.  The
similarities cited by the majority are common components of armed robberiesCan individual acting alone, with a
knife or blunt object, who leaves very quickly after taking or attempting to
take bills from a cash register.  Whether
considered alone or in combination, these characteristics lack the distinction
necessary to trigger the identity exception in Rule 404(b).








Moreover, there is a dramatic and pronounced dissimilarity
between the charged offense (1982 capital murder) and the extraneous offenses
(1992 aggravated robberies) in that the former was a horribly violent, bloody
crime that ended in the brutal stabbing and stomping death of the store clerk,
while the latter offensesCcommitted nearly a decade laterCinvolved only robbery or attempted
robbery,  no injuries in either, and
property loss in only one.  The
perpetrator in the charged offense was an extremely violent person as was shown
by the multiple knife wounds and evidence that the perpetrator stomped on the
victim=s chest
during the attack, rupturing the victim=s
heart.  The perpetrators in the two
extraneous offenses were scared off by threats from one clerk and a call to the
police from the other, without causing any injury in either case.  This significant dissimilarity alone undermines the force of
any inference of identity that might have flowed from the common,
non-distinctive characteristics of the three offenses.








The times of day of all three
offenses are also dissimilar.  Neither
the same type of weapon nor the same get-away vehicle was used in all three
offenses.  There is also the significant
distinctive difference in the lapse of time between the two offenses in
December 1992 and the March 1982 offense charged in the indictment.  The extraneous offenses and the charged
offense were separated by almost ten years.  See Johnson, 68 S.W.3d at 651
(stating that sufficient similarity may be shown by proximity in time or by
common mode of committing the offenses). 
By any relevant measure, there is nothing so distinctive or specific
about these three offenses that would establish that they were all committed by
the same person.  This point is
illustrated by the Court of Criminal Appeals= analysis
in Ford v. State, a case in which our high court found that the two
robbery offenses at issueCwith
stronger Aidentity facts@ than are
present hereCwere not sufficiently similar to
warrant admission into evidence of the extraneous offense.  484 S.W.2d 727, 730 (Tex. Crim. App.
1972).  In Ford, the perpetrator
of each robbery was a tall black man who wore a purple shirt and used a small
pistol.  Id.  The robberies however, were separated
by almost two months in time, and the first robbery was committed by four men,
whereas the second was committed by only one who entered on the pretext of
seeking work.  Id. (emphasis
added).  The Court of Criminal Appeals
observed, Athere will always be similarities
in the commission of the same type of crime. 
That is, any case of robbery by firearms is quite likely to have been
committed in much the same way as any other.@  Id. at 730.  AWhat must
be shown to make the evidence of the extraneous crime admissible is something
that sets it apart from its class or type of crime in general, and marks it
distinctively in the same manner as the principal crime.@  Id.; see also Walker v. State,
588 S.W.2d 920, 924 (Tex. Crim. App. 1979) (finding the two offenses at issue
to be sufficiently similar because (1) the offenses both occurred at night, in
the same area, within a period of one month; (2) the perpetrator was alone,
carried a small gun, and tied up the victims in a similar manner; (3) in both
cases a robbery preceded the rape, and all coins but pennies were stolen from
the victims); Clarke v. State, 785 S.W.2d 860, 867 (Tex. App.CFort
Worth 1990), aff=d, 811
S.W.2d 99 (Tex. Crim. App. 1991) (finding that evidence of an extraneous sexual
assault was sufficiently similar to the offense charged where: (1) in both
offenses the victims were attacked at home during the night; (2) the assailant
used duct tape to blindfold both victims and bind their hands and feet; (3) the
perpetrator either washed the victim=s vagina
after the attack or made the victim wash her vagina before he left; and (4) the
perpetrator also used a knife in the attack and asked each victim whether she
had a gun in the house).








In this case, the similarities are not substantial enough to warrant
the admission of the extraneous offenses on this issue of identity.  Rather, the similarities are more in the
nature of the similarities common to the type of crime itself.  Compare Johnston v. State, 145
S.W.3d 215, 224 (Tex. Crim. App. 2004) (holding that extraneous offense
evidence was not relevant to prove either identity or absence of mistake and
was inadmissible to show that the defendant, Aa chronic
child abuser,@ acted in conformity with his
character on the occasion at issue) and Owens v. State, 827
S.W.2d 911, 915 (Tex. Crim. App. 1992) (holding that extraneous offense was
inadmissible because the similarities between the charged offense and
extraneous offense were not so unusual or particularized as to signal
conclusively that they were the handiwork of the same person), with Martin
v. State, 173 S.W.3d. 463, 467B68 (Tex.
Crim. App. 2005) (holding that evidence of extraneous sexual assault was
admissible for purposes of identity in prosecution for sex offense where
defendant admitted that he falsely claimed to be a law enforcement officer as a
Aruse@ to pick
up both the victim and the extraneous offense witness; the facts showed
distinctive similarities to qualify as an exception to the general rule
precluding extraneous offense evidence).[5]

There is
nothing so distinctive or specific about these three offenses that would tend
to show that they were all committed by the same person.  This point is perhaps best illustrated by the
following side-by-side comparison of the characteristics of the three incidents
in question:








 


 
 
  
  
  
 Date
 
 
  
  
  
 Weapon
 
 
  
 Name and Location of Convenience Store
 
 
  
 Time of Day Offense Occurred
 
 
  
 Actions of Perpetrator 
 Before Offense
 
 
  
 Injury or Death, if any, to Complaining Witness/Victim
 
 
  
  
 Items Stolen
 
 
 
 
  
 12/15/92
 
 
  
 Knife
 
 
  
 UniGrocery -
 East Houston
 
 
  
 Morning
 
 
  
 Perpetrator came in the
 store and asked for Marlboro cigarettes, left and returned a short time later
 and asked, ADo you have a restroom?@  When clerk indicated there was no public
 restroom, perpetrator walked out the door and returned with a knife.
 
 
  
 No injury; perpetrator
 ran out the door when complainant said, AWhere is my gun?@  AWhere is my ... stick?@
 
 
  
 Nothing stolen.
 
 
 
 
  
 12/16/92
 
 
  
 Crowbar
 
 
  
 Stop >n Go -
 Southeast Houston
 
 
  
 Night
 
 
  
 Perpetrator came in the
 store and asked to use the restroom and then asked if Athat older man@ [an Asian male] was
 working. When clerk indicated the man was not working, perpetrator left and
 returned later.  On the second visit,
 he asked about cigarettes.  Perpetrator
 raised crowbar in a threatening manner.
 
 
  
 No injury; when clerk
 called police, perpetrator opened cash register, grabbed bills and left
 store.
 
 
  
 Cash (bills), but not coins.
 
 
 
 
  
 03/12/82
 
 
  
 Knife
 
 
  
 U-Tote-M -
 Pasadena
 
 
  
 Late Night
 
 
  
 Not known.
 
 
  
 Violent , bloody murder;
 complainant suffered 7 stab wounds to the abdomen, 2 stab wounds to the
 chest, and traumatic rupture of the heart, as well as multiple cutting wounds
 of the neck and upper extremities.
 
 
  
 Disputed.
 No bills remained in the
 cash register, only coins.
 
 


 

 

Because the offenses are not sufficiently similar to constitute Asignature@ offenses, the
trial court erred to the extent it admitted the offenses for purposes of
establishing identity.








The similarity requirement necessary for admissibility based
on identity, however, is diminished when the stated basis for admissibility is
intent.  See Plante v. State, 692
S.W.2d 487, 493 (Tex. Crim. App. 1985). 
There was a scarce amount of other evidence offered for the jury to
determine that this murder occurred in the course of the commission of an
aggravated robbery or attempted aggravated robbery.  The State=s witnesses could only say that there
was a difference between the amount of money that should have been in the cash
register and the amount that was there. 
On cross-examination the State=s witness acknowledged that the
difference could have been the result of misbalancing as opposed to a
robbery.  None of the fingerprints on the
cash register were identified as belonging to appellant.  There was an amount of money in the murdered
store clerk=s pants pocket that would have been
near the amount the State=s witness said should have been in the register. The store
clerk had money in his billfold, which appellant argues is circumstantial
evidence that there was some reason that the store clerk was carrying loose
money in his pocket.  There was no blood
evidence around the cash register and no money or valuables appeared to have
been taken from the store clerk.  

Appellant sums up his argument that the trial court erred in
allowing this prejudicial evidence in this way:

AThe only evidence of a robbery would be the natural
presumption that it must have been for the purpose of a robbery.  That might be a natural presumption, but it
is not a legal presumption.  The State
realized this lack of evidence and that is why they wished to offer the
extraneous offenses . . . Evidence of the extraneous robberies of 1992, was
therefore necessary for the jury to convict of capital murder in this case.@ 

 

Appellant argues that by allowing the jury to
infer the intent to rob in the capital murder case before them, from the
evidence that he had an intent to rob in the 1992 offenses is in essence
allowing the jury Ato
determine that he has an intent to rob generally. . . [t]hat his character is
one for which they could infer that he generally has an intent to rob, and
therefore the instant case must be one of >character
conformity= for that particular character
trait.@ 








Evidence of a person=s bad
character is generally not admissible for the purpose of showing that he acted
in conformity therewith.  Robbins v.
State, 88 S.W.3d 256, 259 (Tex. Crim. App. 2002).  This evidence, however, may be admissible
when it is relevant to a non-character conformity issue of consequence in the
case such as establishing intent or rebutting a defensive theory.  Id. 
Because trial courts are in the best position to decide these
admissibility questions, an appellate court must review a trial court=s
admissibility decision under an abuse-of-discretion standard.  Id. 
This standard requires an appellate court to uphold a trial court=s
admissibility decision when that decision is within the zone of reasonable
disagreement.  Id.   

Under the indictment, to convict
appellant of capital murder, the State had to prove that appellant
intentionally murdered the complainant in the course of committing or
attempting to commit robbery.  See
Tex. Pen. Code Ann. '
19.03(a)(2) (West 2004).  A person
attempts to commit robbery if, with specific intent to commit robbery, he does
an act amounting to more than mere preparation that tends but fails to effect
the commission of the offense intended.  See
Tex. Pen. Code Ann. ' 15.01(a)
(West 2004).  To determine that appellant
intended to commit robbery, the jury had to find that appellant had an intent
to unlawfully appropriate property with the intent to deprive the owner of the
property as well as an intent to obtain or maintain control of the
property.  See Tex. Pen. Code Ann. '' 29.02,
31.03(a) (West 2004).   

Intent can be inferred from acts,
words, and conduct of the accused.  Hernandez
v. State, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991).  If the State=s direct
evidence shows the intent element of the crime and that evidence is
uncontradicted by the defendant or not undermined by cross‑examination of
the State=s witnesses, the offer of other
crimes is unjustified due to the lack of relevancy.  Rankin, 974 S.W.2d at 719. 













The majority opinion indicates that, because the indictment required
the State to prove beyond a reasonable doubt that appellant killed the
complainant with the intent to commit a robbery, appellant=s intent
to commit robbery was a fact of consequence. 
This is contrary to the Court of Criminal Appeals decision in Robbins
v. State.  See 88 S.W.3d 256,
260B61 (Tex.
Crim. App.  2002) (holding that pleading
not guilty to an offense that requires criminal intent is not sufficient, by
itself, to put the defendant=s intent
in issue, so as to justify admission of prior bad acts or extraneous offenses
under Rule 404(b)).  This court should
inquire as to whether appellant made his intent to commit robbery a fact of
consequence through vigorous cross-examination, presentation of defensive
theories, or other means.  See id.
at 261.  The record shows that, by
cross-examination, appellant suggested that no money or other property may have
been taken from the complainant.  If the
jury concluded that no property was taken, it still could convict appellant of
capital murder; however, it would have to conclude that appellant intentionally
murdered the complainant in the course of attempting to commit robbery, rather
than in the course of committing robbery. 
On this record, appellant=s
cross-examination sufficiently put in issue his alleged intent to commit
robbery.  See id. at 261B63
(holding that defendant put his intent at issue by going beyond his plea of not
guilty through vigorous cross-examination of prosecution witnesses suggesting
that the victim=s death
was caused by some means other than defendant=s
conduct, and therefore extraneous-offense evidence was admissible to prove
criminal intent).  Accordingly, the trial
court did not abuse its discretion in allowing the jury to consider the 1992
offenses as to this issue of consequence. 
Although the record does not support the other purposes[6]
as to which the trial court allowed the jury to consider this evidence, there
is nothing to indicate any harm resulted from the jury=s
possible consideration of these offenses for the other purposes mentioned.  Thus, there is no reason to reverse on this
basis.  The court correctly concludes
that the trial court did not abuse its discretion in overruling appellant=s Rule
403 objection.  Therefore, the court
correctly overrules appellant=s first
and fourth issues, and affirms the trial court=s
judgment.

 

/s/        Kem
Thompson Frost

Justice

 

Judgment rendered and Majority and Concurring
Opinions filed January 19, 2006.

Panel consists of Justices Anderson, Hudson, and
Frost.  (Anderson, J., majority.)

Publish C Tex. R. App. P. 47.2(b).

 











[1]  See Taylor v. State, 920 S.W.2d 319 (Tex. Crim.
App. 1996) (holding that when extraneous-offense evidence is relevant to
motive, intent, identity, and rebuttal of defensive theory, trial court may
properly include more than one purpose in jury instruction).





[2]  Emphasis
added.





[3]  The majority opinion states:

 

At defense counsel=s request, the trial court
instructed the jury they could only consider evidence of the extraneous
offenses Ain determining the motive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident of the defendant, if any, in connection with the offense,
if any, alleged against him in the indictment and for no other purpose.  

 

Though
defense counsel requested an instruction, he did not request this one; rather,
defense counsel specifically asked the trial court to limit the instruction to Awhatever the limited reason@ for admitting the extraneous-offense evidence
was.  The trial court told the jury they
could consider the 1992 aggravated robberies 
in determining motive, opportunity, intent, preparation, plan,
knowledge, identity, or absence of mistake of accident of appellant.  

 





[4] Appellant challenges the trial court=s decision to allow the jury to consider the
extraneous-offense evidence and argues that the jury should not have been
allowed  to consider it for any of the
purposes listed in Rule 404(b); however, appellant does not argue the trial
court=s overly broad instruction resulted in any harm beyond
the jury=s consideration of the evidence for purposes of
intent.  In criminal cases, however, this
court has discretion to review error preserved in the trial court but not
argued on appeal.  See Rezac v State,
782 S.W.2d 869, 870 (Tex. Crim. App. 1990). 
Although defense counsel did not specifically object to the court=s instruction to the jury as including more purposes
than the State urged or the trial court mentioned, defense counsel specifically
asked the court to Agive an [sic] limiting instruction to the jury prior
to them hearing this evidence as to what the limited purpose is.@  When the trial
court asked defense counsel what admonition he wanted the jury to receive,
defense counsel responded, Ayou=re
allowing this in for some reason, whatever that limited reason is . . .  If there is a limited reason, then I ask the
jury be instructed what that limited reason is.@  (emphasis
added).  The trial court then referred to
the instruction in the jury charge and defense counsel stated, AI=m
objecting to each and every one of those reasons in there as not being valid
reasons for allowing ths character evidence of the defendant in before this
jury.@  The trial court overruled the objection.  Defense counsel asked the court for Aa running objection to each and every question that is
asked of each and every one of theB these
witnesses about these extraneous offenses in front of the jury@ and the trial court granted the defense a running
objection to the evidence after rejecting defense counsel=s arguments against admission of the evidence.  This action was sufficient to preserve error.





[5]  See also
Johnson, 68 S.W.3d at 651(holding that extraneous offense evidence
was admissible where the offenses were committed within a few hours of each
other, directed at lone women, and involving another victim=s red Ford Taurus); Ransom v. State, 503
S.W.2d 810, 813 (Tex. Crim. App. 1974) (holding that the offenses were
sufficiently similar because the offenses were committed three days apart and
both offenses were robberies with a gun and the defendant had an accomplice
with him on both occasions); Davis v. State, __ S.W.3d. __, No.
06-05-00001-CR, 2005 WL 3093388, at *6B7 (Tex.
App.CTexarkana, Nov. 21, 2005, no pet. h.) (holding that
evidence of extraneous offense was admissible to prove identity based on
similar modus operandi in aggravated robbery and aggravated kidnapping
prosecution, when all of the offenses occurred at the same time of light, in
the same location and the attacker in all offenses wore the same type of
clothing); Thomas v. State, 126 S.W.3d 138, 143B44 (Tex. App.CHouston
[1st Dist.] 2003, pet. ref=d) (holding that admission of extraneous offense was
admissible to prove identity where victims were both women in their late
sixties/early seventies and had been harassed at night for some time over the
same period of time, perpetrator entered home by breaking a window, while
leaving pornographic pictures outside one of the victims= home); Reyes v. State, 69 S.W.3d 725,
735B36 (Tex. App.CCorpus
Christi 2002, pet. ref=d) (holding that trial court did not err in
determining that extraneous-offense evidence of a prior incident of burglary
and sexual assault allegedly committed by defendant was relevant to show
identity); Webb v. State, 36 S.W.3d 164, 180B82 (Tex. App.CHouston
[14th Dist.] 2000, pet. ref=d) (holding that the trial court abused its discretion
in admitting extraneous offense because such evidence did not have any true
relevance apart from the [appellant=s]
character or his actions in conformity therewith). 





[6]  Motive is not an essential element
of a criminal case and need not be proved to sustain a conviction for
commission of the offense.  Bush v.
State, 628 S.W.2d 441, 444 (Tex. Crim. App.1982); Zuliani, 903
S.W.2d 812, 826B27 (Tex. App.CAustin 1995, pet. ref=d). 
The admissibility of extraneous offense evidence to show motive is
usually required to relate or pertain to other acts by the accused against the
complainant in the offense for which the accused is presently being tried.  Foy v. State, 593 S.W.2d 707, 708B09 (Tex. Crim. App. 1980).  The issue of motive was not raised in this
case, and thus the extraneous offenses were not admissible under this
theory.  

 

Evidence of an extraneous offense
to rebut a defense of Alack of opportunity@ or Aimpossibility@ is admissible under Rule
404(b).  See, e.g., Wheeler v. State,
67 S.W.3d 879, 888 (Tex. Crim. App. 2002); Powell v. State, 63 S.W.3d
435, 438 (Tex. Crim. App. 2001) (stating that extraneous offenses with other
children may be admissible when defendant claimed that he lacked any
opportunity to commit sexual abuse because many children were always in the
same room).  However, the issue of
opportunity was not raised in this case nor did the State proffer the
extraneous offenses for that stated purpose. 
It was error to admit the extraneous offenses for this purpose. 

 

A claim that the alleged act was
done by accident or mistake is a defensive issue that must be raised.  Using accident or mistake as the basis for
the introduction of extraneous offenses may be pointless if the defendant has
not claimed accident or mistake.  Prior v. State, 647 S.W.2d 956, 959 (Tex.
Crim. App. 1983).  In the instant case,
appellant denied the alleged offense by his plea of not guilty, and never
raised a claim that the conduct alleged in the indictment was the product
of  accident or mistake.  Because neither accident nor mistake was
raised, neither could serve as the purpose for admitting the extraneous
offenses under Rule 404(b) and it was error to admit them on this basis.

 

Though extraneous
offenses may be admissible under Rule 404(b) to prove plan, preparation, or
knowledge, these issues were not raised in this case.  Therefore, they could not serve as a proper
purpose for admitting the extraneous offenses.  See Daggett v. State, __ S.W.3d. __ 2005
WL 3408057, at *4B5 (Tex. Crim. App. December 14,
2005).  Courts frequently admit evidence
of extraneous acts under this exception notCas intendedCto show acts the defendant took in preparation for the
ultimate charged offense, but, rather for the improper purpose of showing  repeated acts that are similar to the charged
offense.  Id.  Repetition of the same act or same crime does
not equal a Aplan.@ 
Id.  It equals the repeated
commission of the same criminal offense offered obliquely to show bad character
and conduct in conformity with that bad character C Aonce a thief, always a thief.@ 
This bad‑character‑conformity purpose, whether express or
not, is precisely what is barred by Rule 404(b).  Id.  Thus,
if the proponent is unable to articulate exactly how an extraneous act tends to
prove a step toward an ultimate goal or overarching plan, the evidence is not
admissible to prove part of a Aplan.@ 
Id.  Plan or preparation
was not raised and could not have served as a legitimate purpose for admitting
the extraneous offenses in this case.