Opinion issued May 4, 2006














In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00977-CR
NO. 01-04-00978-CR
____________

FIDEL ALEXANDER ORTIZ, Appellant

V.

THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Cause Nos. 945,282 and 997,653
 

 
 
MEMORANDUM OPINION
             In two separate cases tried together, the trial court found appellant, Fidel
Alexander Ortiz, guilty of the offenses of arson of open-space land


 and arson of a
habitation.


 After finding true the allegation in one enhancement paragraph that
appellant had a previous felony conviction, the trial court assessed his punishment at
confinement for 50 years in the arson of a habitation case and confinement for 35
years in the arson of open-space land case, with the sentences to run concurrently. 
In four issues, appellant contends that the evidence is legally and factually
insufficient to support his conviction for arson of a habitation, the evidence is
factually insufficient to support his conviction for arson of open-space land, and he
was denied effective assistance of counsel. 
          We affirm.
Factual and Procedural Background  Hector Cueller, the owner of a residence at 12700 Aqueduct Road, testified that
he left for work at approximately 8:30 a.m. on April 10, 2003. His wife, Pam Cueller,
the only other resident of the home, left shortly thereafter. Cueller returned home
from work early that afternoon when authorities informed him that his home had been
destroyed by a fire. Upon his arrival, Cueller noticed several items that had either
been moved, removed, or brought to his home since his departure in the morning. An
orange hammock, usually hung about 150 feet from the house, was missing and a pair
of black army boots that Cueller did not recognize had been hung in its place. 
Cueller’s own boots, which he had left on the front porch of his home that morning,
were also missing. A Rust-oleum spray can that had been on the back deck when he
left that morning was inside the barbecue pit. Arson investigators also discovered
orange peels in the Cuellers’ back yard barbecue pit. Cueller explained that his boots
and the hammock were later recovered from appellant. 
          Harris County arson investigator R. Janczak testified that on April 10, at
approximately 1:45 p.m., the Sheldon Volunteer Fire Department requested that arson
investigators come to the scene of the fire at the Cuellers’ home. He noted that the
fire had completely destroyed the one-story home, and, based on burn patterns and
fire damage, determined that the fire originated at the northeast side of the home, near
the deck. The fire department advised Janczak that there were some items in the
barbecue pit that “they didn’t believed belonged there.” Janczak explained that the
barbecue pit was on the opposite side of the deck and was not damaged by the fire. 
Janczak found an aerosol can, spray paint, and papers inside the deck’s barbecue pit;
inside the papers were the remains of an orange peel. Janczak did not believe the
aerosol can had been used in the fire because it was not found in an area where the
fire started. Janczak also noted the presence of an open flame lighter, which belonged
to the Cuellers, on a table near the barbecue pit. The Cuellers told Janczak that the
aerosol can had not been in the barbecue pit and that they did not have any oranges
in their home. Janczak eliminated all the appliances, the electrical system in the
house, as well any “natural causes” as possible sources for starting the fire. Based on
the elimination of all other causes and his investigation of the scene, Janczak
determined that there had been an incendiary fire that was intentionally set. Janczak
explained that he was contacted by another arson investigator, Lonnie Blevins, later
that afternoon regarding other fires in the area. Janczak and Blevins compiled
photographs of the area showing the location of all the fires and, based on their
investigation, determined that the fires were linked together. 
          Harris County Sheriff’s Deputy M. Campbell testified that, on that same day,
between 1:00 and 1:30 p.m., he was dispatched to investigate a suspicious male,
wearing a camouflage jacket, pants, and a backpack, who had been seen running
about in a restricted dam area at the nearby Lake Houston Pump Station. Campbell,
along with his partner, Deputy R. Campos, canvassed the Eisenhower Park area near
Lake Houston – the waterway area, the river, and the dam – for over three hours but
they could not locate the suspect. The deputies concluded their search and returned
to their office at Duessen Park. However, not long after their arrival, someone
knocked on their door to alert the deputies of an open-field fire in Eisenhower Park,
and they returned to the park.
          Upon arriving at Eisenhower Park, and suspecting that the open-field fire and
the earlier call about a suspicious male were linked, Campbell asked several
fishermen who were in the area if they had seen an Hispanic or Arab male wearing
a camouflage jacket, pants, and a backpack. The fishermen confirmed that they had
seen a person in the area fitting that description. Campbell then asked Larry Crump,
an employee of the Coastal Water Authority, to unlock the waterway gate, and
Campbell proceeded to search the pump station area. There, Campbell noticed
another fire smoldering. As Campbell was advising a dispatcher about the fires,
Crump came toward him and said, “hey, there’s a guy over here starting a fire.” At
that point, Campbell called Campos for back-up and they followed Crump as he led
them to appellant. The sheriff’s deputies arrested appellant after Crump identified
him as the person whom he had seen near “something smoldering” moments earlier. 
          Larry Crump testified that while working at the Lake Houston Pump Station
that day, at approximately 4:00 p.m., he allowed Harris County Sheriff’s Department
deputies inside the pump station to search for a suspicious male. After Campbell had
been “in there awhile,” Crump proceeded onto the property to investigate because he
had “heard there were some fires” and wanted “to see if [the fires] were on [Costal
Water Authority’s] property.” Crump did locate the fires and, on his way back out
of the pump station, he saw appellant “squatted down beside a tree with . . .
something smoldering.” Crump explained that appellant was wearing a military-type
camouflage jacket and pants. Crump left to retrieve the sheriff’s deputies, and, about
one minute later, was able to lead them back to appellant, whom they took into
custody. 
          Deputies Campbell and Campos explained that, upon his arrest, appellant was
non-responsive and uncooperative. Appellant was dressed in full camouflage and
was in possession of a lighter and a plastic toy gun. Appellant also had a dead puppy,
that appeared to be unborn, in his jacket pocket. His physical condition and personal
hygiene were so poor that the deputies had to make special arrangements for his
transportation after the arrest. Appellant had a bicycle beside him and was wearing
what Campbell initially believed was a backpack, but what was later identified as the
orange hammock missing from the Cueller residence. Campbell also noted that
appellant was wearing greenish rain boots – later identified as Hector Cueller’s boots
that had been on the porch of the Cueller residence that morning. Suspecting that
appellant might be linked to the house fire that he had heard reported earlier that
morning, Campbell called arson investigator Janczak to the scene to continue the
investigation.
          Harris County Fire Marshall’s office investigator L. Blevins, testified that, on
April 10, at approximately 6:30 p.m., he was dispatched to the scene of an open-space
land fire in the Lake Houston area on Aqueduct Road. He identified three different
fires in the wooded area. Blevins identified “Fire No. 1,” which he explained was set
intentionally by a handheld flame, as a grass and wood fire that burned between one-quarter and one-half of an acre of land. “Fire No. 2,” according to Blevins, was a
“cooking or camp-type fire” ignited by a handheld flame using wood, debris, and
trash from the area. “Fire No. 3,” located in the area where Crump saw appellant
squatting, was intentionally set by a handheld open flame but never grew past the
“incendiary stage.” All three of the open-space land fires damaged the vegetation,
rocks, and fencing in the area where each fire was set. Blevins determined that all
three fires were intentionally set by ruling out all accidental sources such as power
lines, human traffic, smoking cigarettes, burning controlled fires in the wooded area,
and lightning. The three fires were in “close [physical] proximity to each other,”
while the house fire was located some distance from all of the open-land fires. 
Blevins also determined that the open-space land fires were set or ignited in relatively
close temporal proximity to one another, while the house fire was started
approximately six hours before the open-space land fires. When alerted of the earlier
house fire, Blevins contacted Janczak. Based on their discussion and investigations,
Blevins and Janczak concluded that the house fire and the open-space land fires were
connected. 
          Four days after appellant’s arrest, the trial court granted the State’s motion for
psychiatric examination for sanity and competency because appellant refused to
communicate with his trial counsel. Dr. Ramon Laval testified that, on June 10, 2003,
pursuant to an order from the trial court, he attempted to examine appellant at the
Harris County Jail. Laval noted that appellant was unresponsive and did not
acknowledge his instructions. Laval explained that two mental health technicians at
the inpatient psychiatric unit of the Harris County Jail had told Laval that appellant
had made no verbalizations since his transfer to the psychiatric unit. Appellant had
been assessed by a mental health professional on April 10, 2003 and was reported to
be generally mute and unresponsive. Appellant had been treated with anti-psychotic
medication but, at that point, had demonstrated no significant changes in his mental
health. Laval also noted in his report that since his admission to the inpatient unit,
appellant had been observed urinating on himself and defecating in the shower. He
had refused to keep his clothes on and had been inattentive to his personal hygiene. 
Laval concluded that appellant was “suffering from a severe mental illness with
symptoms that are of sufficient severity to prohibit him from standing trial at the
present time.” 
          On June 16, 2003, based on Laval’s findings, a jury found appellant
incompetent to stand trial, and appellant was admitted to the North Texas State
Hospital of the Texas Department of Mental Health and Mental Retardation
(“MHMR”). Appellant was treated with anti-psychotic medicine for approximately
three months before being re-examined for competency. 
          Dr. Gary Holly, an associate clinical psychologist at the North Texas State
Hospital, conducted a second competency assessment on September 23, 2003. Holly
interviewed appellant for approximately 60 minutes and reviewed appellant’s medical
records and ward chart. These records included documents regarding the alleged
offense, a psychiatric evaluation at the time of admission to MHMR, social history,
reports on treatment progress, and descriptions of current behavior. Included in
Holly’s report were the findings of Thomas D. Wiman, a doctor at MHMR who had
conducted the initial mental status assessment of appellant upon his admission. 
Appellant told Wiman that he had heard auditory hallucinations and seen “diablo” for
years. Wiman also reported that “appellant’s speech was loose and tangential and his
thought processes did not make sense even when he tried to piece together his story
about the fires.” 
          Despite these reports, during Holly’s competency evaluation, he noted that
appellant’s dress and hygiene were neat and there were no unusual distinguishing
characteristics. Holly stated that appellant had adequate orientation and that his
speech was normal for tone, rate, and volume. Appellant denied auditory
hallucinations and did not present any symptoms of a mental illness. Based on this
evaluation, Holly concluded that appellant now met the criteria to be considered
competent to stand trial.
          On December 11, 2003, Dr. Laval submitted another sanity evaluation to the
trial court. This time, Laval concluded that appellant did not meet the criteria for an
insanity defense. Laval stated that, “according to the information available to [him],
[appellant] was not suffering from a mental disease or defect of the type which would
have rendered him unable to know right from wrong at the time of the alleged
offense.” However, Laval qualified his diagnosis by noting that the police report “did
not provide information on the circumstances surrounding appellant’s arrest or
appellant’s actions or statements at the time he was arrested.”
Legal and Factual Sufficiency
          In his first and second issues, appellant argues that the evidence was legally
and factually insufficient to support his conviction of arson of a habitation because
the evidence “permits only an inference that he was at the crime scene and not that
he actually started the fire.” In his third issue, appellant argues that the evidence was
factually insufficient to sustain his conviction for arson of open-space land because
the only evidence supporting the conviction “came by testimony that was extremely
vague and inadmissible hearsay.”
          Initially, we note that appellant contends that it is “not necessarily proper” for
this Court to consider any evidence adduced regarding the arson of open-space land
to support a conviction in the arson of a habitation case. Appellant asserts that the
evidence connecting him to the open-space land fires “was not admissible for any
purpose under Texas Rules of Evidence 404(b),” including the purpose of proving his
commission of the arson of a habitation. See Tex. R. Evid. 404(b) (Vernon 2003). 
Specifically, appellant complains of (1) Crump’s statement connecting appellant with
“something smoldering,” (2) Campbell’s testimony that Crump told him appellant
was starting a fire, and (3) Campbell’s affirmative answer to a question asking, “did
Larry Crump identify the person that you were giving these commands to [during the
arrest]” as being the person that started the fire? Appellant argues that without this
“objectionable extraneous-offense evidence” concerning the open-space land fires or
appellant’s connection to them, the evidence that appellant committed the arson of
a habitation was legally insufficient. 
          Here, however, both the arson of open-space land case and the arson of a
habitation case were tried in a single proceeding. See Tex. Pen. Code Ann. 3.02(a)
(Vernon 2003) (“A defendant may be prosecuted in a single proceeding for all
offenses arising out of the same criminal episode.”). Appellant did not object to
trying the cases together or in any way assert his right to a severance of the cases. See
Id. 3.04(a) (Vernon Supp. 2005) (stating defendant shall have right to severance of
two or more offenses consolidated or joined for trial under section 3.02). Moreover,
appellant, in the arson of a habitation case, did not object to the admission of
evidence adduced in regard to the arson of open-space land. He also did not make a
motion to the trial court to consider the evidence of each offense separately or
otherwise limit the consideration of any evidence. When the State attempts to adduce
evidence of “other crimes, wrongs, or acts,” a defendant must object in a timely
fashion to preserve his complaint for appeal. Montgomery v. State, 810 S.W.2d 372,
387 (Tex. Crim. App. 1990) (op. on reh’g). Accordingly, in our review of the legal
and factual sufficiency of the evidence in each case, we will consider all the evidence
adduced regarding both the arson of open-space land case and the arson of a
habitation case. 
Standard of Review
          We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt.
Lane v. State, 151 S.W.3d 188, 191–92 (Tex. Crim. App. 2004). This standard is the
same in both direct and circumstantial evidence cases. Burden v. State, 55 S.W.3d
608, 613 (Tex. Crim. App. 2001). A review of the evidence for legal sufficiency does
not involve a re-weighing of the evidence or a substitution of the fact finder’s
judgment. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The fact
finder is the exclusive judge of witness credibility, the determiner of the weight
accorded to witness testimony, and the reconciler of conflicts in the evidence. Jones
v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). Further, all evidence, whether
properly or improperly admitted, will be considered when reviewing the evidence for
legal sufficiency. Johnson v. State, 967 S.W.2d 410, 412 (Tex. Crim. App. 1998).
          In our review of the factual sufficiency of the evidence, we view all of the
evidence neutrally, not in the light most favorable to the verdict, and we will set aside
the verdict “only if the evidence is so weak that the verdict is clearly wrong and
manifestly unjust, or the contrary evidence is so strong that the standard of proof
beyond a reasonable doubt could not have been met.” Escamilla v. State, 143 S.W.3d
814, 817 (Tex. Crim. App. 2004). The only question to be answered in a factual
sufficiency review is whether, considering the evidence in a neutral light, the fact
finder was rationally justified in finding guilt beyond a reasonable doubt. Zuniga v.
State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). In performing a factual
sufficiency review, we are to give deference to the fact finder’s determinations,
including determinations involving the credibility and demeanor of witnesses. Id. at
481; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). We may not
substitute our judgment for the fact finder’s. Zuniga, 144 S.W.3d at 482.  Arson of a Habitation
          Appellant first argues that the evidence was legally and factually insufficient
to sustain his conviction for arson of a habitation because the evidence “falls far short
of proving beyond a reasonable doubt that [appellant] started [the fire].” He asserts
that the evidence only implies his mere presence at the house sometime after the
Cuellers left for work on the day of the fire.
          A person commits the offense of arson of a habitation if he starts a fire,
intending to damage or destroy a habitation knowing that it is located on property
belonging to another. Tex. Pen. Code Ann. § 28.02(a)(2)(D) (Vernon 2003). 
          Here, arson investigator Janczak testified that, in his opinion, there had been
an incendiary fire that was intentionally set. His uncontroverted testimony was
sufficient for a rational trier of fact to conclude that the fire was intentionally set. 
Machado v. State, 753 S.W.2d 252, 254 (Tex. App.—Houston [1st Dist.] 1988, pet.
ref’d). The record reveals that the structure burned was a habitation on property
belonging to the Cuellers. 
          The evidence also supports a finding that appellant had been at the Cuellers’
home on the day of the fire. At the time of his apprehension, sheriff’s deputies found
appellant in possession of items missing from the Cuellers’ home– namely, the orange
hammock and Hector Cueller’s boots. Various items on the deck and in the barbecue
pit had been moved and other items had been brought to the Cuellers’ home since
they had left for work earlier that morning. Thus, the physical evidence placed
appellant at the scene of the house fire within the relatively short window of time
between the Cueller’s leaving their home in the morning and the time of the fire as
estimated by arson investigators. 
          Appellant notes that the mere presence of an accused at the scene of an offense
is not alone sufficient to support a conviction. See Thomas v. State, 645 S.W.2d 798,
800 (Tex. Crim. App. 1983). Appellant directs our attention to Robertson v. State as
illustrative of the principle that even highly suspicious circumstances implicating a
defendant arrested at the scene of a crime do not equate to the high standard of guilt
beyond a reasonable doubt. See 888 S.W.2d 493, 494–96 (Tex. App.—Amarillo
1994, pet. ref’d). In Robertson, police officers preparing to serve a warrant at a
residence noticed that an electric company’s meter had been removed from the
electric box servicing the residence. Id. at 494. The officers then saw a line running
from a power pole into the house and noticed that there were several lights on in the
house. Id. The electric company’s records showed that service was terminated at that
residence over two years earlier. Id. When the officers knocked on the door,
Robertson answered, and the officers entered to find several appliances and light
fixtures in use. Id. They also found only one bed and men’s clothing that fit
Robertson’s unusually short height. Id. When asked how long he had lived at that
address, Robertson responded, “all my life.” Id. In reversing Robertson’s conviction
for criminal mischief, the court of appeals stated that while there was sufficient
evidence showing that tampering of the electric line had occurred, “mere possession
of the premises, without more, is not sufficient to establish that the possessor actually
committed the affirmative act constituting the crime.”


 Id. at 495–96. 
          It is true that evidence of appellant’s presence at the scene of the house fire
shortly before the fire was discovered does not by itself prove that appellant set the
fire. See O’Keefe v. State, 687 S.W.2d 345, 349 (Tex. Crim. App. 1985). However,
his presence was “a circumstance tending to prove guilt” which, combined with other
facts, sufficed to show that he committed the offense. See Thomas, 645 S.W.2d at
800; Robertson, 888 S.W.2d at 495 (holding evidence is sufficient if fact finder’s
conclusion is warranted by combined and cumulative force of all incriminating
circumstances). 
          Here, the record reveals much more than appellant’s mere presence at the
Cuellers’ home. During the short amount of time between the Cuellers leaving their
home and the start of the house fire, appellant’s boots were left at the scene and
appellant took or moved other items that had been around the Cuellers’ home. 
Witnesses spotted appellant in the area of nearby open-space land fires a few hours
later. Crump, who saw appellant squatting down near a smoldering fire, led the
deputies to appellant and told them that appellant had been “starting a fire.” The
home and the open-space lands involved were both private property and in areas not
heavily frequented by the general public. All natural causes of the fires or other
causes were ruled out by the arson investigators. The open-space land fires and the
home fire were set within hours of each other and within relatively close physical
proximity. Janczak and Blevins concluded that both the open-space land fires and the
home fire were set with the use of an open flame and other combustible materials. 
Upon his arrest, the deputies found appellant in possession of a lighter, an item that
was consistent with the arson investigators’ findings. The evidence led investigators
to conclude that the fire at the Cuellers’ home and the open-space land fires in
Eisenhower park were connected. Appellant presented no contrary evidence.
          In circumstantial evidence cases, such as this one, it is not necessary that every
fact point directly and independently to the accused’s guilt. Barnes v. State, 876
S.W.2d 316, 321 (Tex. Crim. App. 1994). As noted, the evidence is sufficient if the
fact finder’s conclusion is warranted by the combined and cumulative force of all the
incriminating circumstances. Id. Considering all of the evidence, based on the
eyewitness testimony connecting appellant with the nearby open-space land fires, his
possession of an incendiary device, his possession of the homeowner’s hammock and
boots, the temporal and physical proximity of the fires, and the other surrounding
circumstances, and viewing the evidence as a whole and in the light most favorable
to the trial court’s verdict, we conclude that a rational fact finder could have found,
beyond a reasonable doubt, that appellant set the house fire. Furthermore, viewing
the evidence neutrally, being no contrary evidence presented by appellant during trial,
and with appropriate deference to the trial court’s credibility determinations, we
conclude that the evidence was not so weak that the verdict was clearly wrong or
manifestly unjust or that the standard of proof beyond a reasonable doubt could not
have been met. Accordingly, we hold that the evidence was legally and factually
sufficient to support appellant’s conviction for the offense of arson of a habitation.
          We overrule appellant’s first and second issues. 
Arson of Open Space Land
          Appellant next argues that the evidence was factually insufficient to sustain his
conviction for the offense of arson of open-space land “because the only evidence
that appellant started the open-land fires came by testimony that was extremely vague
and by inadmissible hearsay.” 
          A person commits the offense of arson of open-space land if he starts a fire or
causes an explosion with intent to destroy or damage any vegetation, fence, or
structure on open-space land. Tex. Pen. Code Ann. § 28.02(a)(1) (Vernon 2003). 
          Here, Crump, the pump station employee, testified that he saw appellant
“squatted down beside a tree with . . . something smoldering.” Investigator Blevins
identified the area where Crump saw appellant squatted down by “something
smoldering” as the scene of “Fire No. 3.” Deputy Campbell testified that Crump
approached him at the pump station and informed him that “there’s a guy over here
starting a fire.” Appellant asserts that Crump’s statements connecting him to the
“smoldering” was “rank hearsay and thus too weak to support [his] conviction.” 
          We note that hearsay admitted without objection has probative value and may
be the basis for sustaining a verdict. Chambers v. State, 711 S.W.2d 240, 247 (Tex.
Crim. App. 1986). Once the trier of fact has weighed the probative value of
unobjected-to hearsay evidence in its fact-finding process, an appellate court cannot
deny that evidence probative value or ignore it in its review of the sufficiency of the
evidence. Poindexter v. State, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005); see also
Miles v. State, 918 S.W.2d 511, 512 (Tex. Crim. App. 1996) (holding all evidence
before jury must be considered, whether proper or improper, to assess jury’s factual
findings). Moreover, it is well established that a conviction, including one for arson,
may be based on the testimony of a single eyewitness. Zinger v. State, 932 S.W.2d
511, 518 (Tex. Crim. App. 1996). We also note that there was additional evidence,
as previously discussed, implicating appellant in the open-space land fire – including
his possession of a lighter and his sighting in the area of the other open-space land
fires. 
          Viewing all the relevant evidence in a neutral light, and with appropriate
deference to the trial court’s credibility determinations, we conclude that the evidence
supporting appellant’s conviction for arson of open-space land is not too weak to
support the trial court’s finding of guilt beyond a reasonable doubt and the weight of
the evidence contrary to the verdict is not so strong that the State could not have met
its burden of proof. Accordingly, we hold that the evidence was factually sufficient
to support appellant’s conviction for arson of open-space land.
We overrule appellant’s third issue.
Ineffective Assistance of Counsel
          In his fourth issue, appellant argues that he was denied effective assistance of
counsel in violation of the Sixth amendment


 because his trial counsel failed to
adequately investigate and raise an insanity defense and failed to object to evidence
of extraneous offenses, an improper question, and inadmissible hearsay.
          The standard of review for evaluating claims of ineffective assistance of
counsel is set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052,
2064 (1984). Strickland requires a two-step analysis whereby appellant must show
both that (1) counsel’s performance fell below an objective standard of
reasonableness, and (2) but for counsel’s unprofessional error, there is a reasonable
probability that the result of the proceedings would have been different. Strickland,
466 U.S. at 687, 104 S. Ct. at 2064; Vasquez v. State, 830 S.W.2d 948 (Tex. Crim.
App. 1992). Strickland defines reasonable probability as a “probability sufficient to
undermine confidence in the outcome.” 466 U.S. at 694, 104 S. Ct. at 2068. It is
appellant’s burden to prove ineffective assistance and he must overcome the strong
presumption that, under the circumstances, the challenged action might be considered
sound trial strategy. Gamble v. State, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st
Dist.] 1996, no pet.). Texas law permits a finding of ineffective assistance of counsel
on direct appeal when the record confirms that no reasonable trial strategy could have
justified counsel’s acts or omissions. Vasquez, 830 S.W.2d at 950–51. Appellant first argues that his counsel should have pursued an insanity defense
and “adequately investigate[d] appellant’s sanity.” Strickland requires counsel to
conduct an adequate investigation into defenses that are obviously raised by the
evidence. A reviewing court determines the reasonableness of counsel’s challenged
conduct in context, and views it as of the time of counsel’s conduct. Andrews v.
State, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). 
          In his June 10, 2003 report, Dr. Laval concluded that appellant was suffering
from a severe mental illness. However, six months later, in his December 11, 2003
sanity evaluation, Laval opined that, at the time of the offense, “[t]he information
available to this examiner indicates that the defendant was not suffering from
symptoms of a mental disease or a mental defect.” Because appellant did not file a
motion for new trial, there is no evidence in the record as to the reasons why
appellant’s trial counsel did not pursue an insanity defense. When the record is silent
regarding counsel’s reasons for his conduct, we will defer to counsel’s decisions if
there is at least the possibility that the conduct could have been legitimate trial
strategy. Ortiz v. State, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002). The Court of
Criminal Appeals has emphasized that it will commonly assume a strategic motive
if any can be imagined and find counsel’s performance deficient only if the conduct
was so outrageous that no competent attorney would have engaged in it. Bone v.
State, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002). 
          Here, given Dr. Laval’s opinion that appellant was not legally insane at the
time of the offense, trial counsel might well have concluded that an insanity defense
would have been futile. Under these circumstances, we conclude that appellant has
failed to rebut the presumption that the decision made by his attorney with regard to
an insanity defense was the result of a reasonable trial strategy. See Bone, 77 S.W.3d
at 830 (holding appellate court may not reverse conviction on ineffective assistance
of counsel grounds when counsel’s actions or omissions may have been based upon
tactical decisions, but record contains no specific explanation for counsel’s
decisions).Appellant next alleges ineffective assistance in regard to his trial counsel’s
failure to object to hearsay testimony, an improper question, and the admission of
extraneous-offense evidence. Again, however, because appellant did not file a
motion for new trial, the record provides no explanation as to the motivation behind
trial counsel’s acts or omissions. 
          With respect to appellant’s “extraneous offense” argument, appellant notes that
the two cases for arson of a habitation and arson of open-space land were tried jointly
to the trial court and appellant’s trial counsel did not make an explicit request or
objection for the trial court to consider each offense separately in determining guilt. 
See Tex. Pen. Code Ann. § 3.04(a) (“Whenever two or more offenses have been
consolidated or joined for trial under Section 3.02, the defendant shall have a right
to a severance of the offenses.”). However, we note that counsel may have concluded
there was a strategic advantage in dispensing with both causes simultaneously in front
of the trial court. For example, the trial court, after assessing appellant’s punishment
in the two cases, noted that appellant’s sentences would run concurrently “since they
were tried at the same time.” See Tex. Pen. Code Ann. § 3.03(a) (Vernon Supp.
2005). Moreover, counsel may have reasonably concluded that, even if the cases had
been severed, the evidence adduced regarding the arson of open-space lands would
have been admissible in the arson of a habitation case as proof of appellant’s identity. 
See Ford v. State, 484 S.W.2d 727, 729 (Tex. Crim. App. 1972) (holding evidence
of extraneous offense may be admissible to prove identity through distinguishing
characteristics common to both offenses, including proximity in time and place or
common mode of commission of offenses). 
          Similarly, we cannot conclude that appellant’s trial counsel was ineffective in
not lodging certain hearsay objections. Counsel may have concluded that Campbell’s
statement that Crump told him, “hey, there’s a guy over here starting a fire” would be
admitted over objection as an excited utterance or a present sense impression. Cf.
Green v. State, 876 S.W.2d 226, 228 (Tex. App.—Beaumont 1994, no pet.) (holding
witness statements of present sense-impression to police officer that “[t]he man in the
brown trench coat was shooting” had such exceptional reliability as to warrant its
inclusion within hearsay exception for spontaneous declarations). Moreover,
appellant’s trial counsel may have concluded that the State could have obtained the
same testimony by re-calling Crump to clarify his statements. 
          Finally, we cannot conclude that counsel was ineffective in not objecting when
the State asked Campbell, “did Larry Crump identify the person that you were giving
these commands to as being the person that you [sic] saw lighting the fire?” It is clear
from the surrounding context that Campbell did not actually see appellant lighting a
fire and that the State meant to ask Campbell if, at the time of appellant’s arrest,
Crump identified appellant as the person Crump (not Campbell) saw lighting the fire. 
          We overrule appellant’s fourth issue.
 
 
 
 
 
Conclusion
          We affirm the judgments of the trial court. 
 
 
 
                                                                        Terry Jennings
                                                                        Justice
Panel consists of Justices Nuchia, Jennings, and Higley.
Do not publish. Tex. R. App. P. 47.2(b).